### In re Gary Frank Stevens

[478 A.2d 212]

No. 83-035

Present: **Billings, C.J., Hill and Underwood, JJ., and Daley and Larrow, JJ. (Ret.), Specially Assigned**

Opinion Filed March 16, 1984

*William W. Pearson* of *Downs Rachlin & Martin,* South Burlington, for Petitioner-Appellant.

*John J. Easton, Jr.,* Attorney General, *Susan R. Harritt,* Assistant Attorney General, and *Donna Hepler,* Law Clerk (On the Brief), Montpelier, for Respondent-Appellee.

Underwood, J. Petitioner, Gary Frank Stevens, appeals from an order of the Orleans Superior Court denying his petition for post-conviction relief. 13 V.S.A. § 7135. This appeal challenges the voluntariness of petitioner's plea of guilty to the State's amended charge of manslaughter, alleges ineffective assistance of counsel, and asserts that petitioner was unable to exercise his right of allocution. We affirm on the voluntariness of the plea and the ineffective assistance of counsel issues, but we agree with petitioner that he was unable to exercise his right of allocution in a meaningful way.

Petitioner was involved in an altercation at a restaurant in which he struck a man in the head several times with a beer mug; subsequently, the man died from the blows. Originally, petitioner was charged with first degree murder. After the State amended the charge to manslaughter, petitioner changed his plea from not guilty to guilty. Petitioner retained two private attorneys who represented him throughout the proceedings up to, and including, sentencing.

There was evidence of ongoing plea negotiations, but a formal plea agreement never materialized. At the post-conviction hearing below, an attorney for the State testified that the charge was amended from first degree murder to manslaughter without regard to petitioner's plea. The petitioner himself testified that he knew of no plea agreement and contended that he could either plead guilty or not guilty to the manslaughter charge. The record reveals no disclosure of a plea

agreement to the court by anyone at either the plea change or at sentencing. At an earlier motion one of petitioner's attorneys testified that there had been a plea agreement reached prior to the change of plea. The attorney, however, moved for another hearing on this issue and then testified that he had been mistaken. Since that time, the attorney has consistently maintained that there was no plea agreement.

After the plea of guilty the court ordered a presentence investigation report. During the period of time the investigation was being conducted, petitioner underwent several weeks of psychiatric examination at the St. Albans Correctional Center; a report of this psychiatric examination was filed with the court on the day of sentencing. Included in the psychiatric report was a handwritten statement by petitioner that he alleges was prejudicial and exerted a negative impact on the sentencing court. An assistant judge who participated in petitioner's sentencing testified that the statement had a negative impact on him. Petitioner's attorneys were aware of the written statement shortly before sentencing but did not consider it to be of great importance given their prior relationship with petitioner. Petitioner testified that he was unaware that the statement was before the court, and that he would have written it differently had he known it would go before the court. At the sentencing hearing, counsel for petitioner argued for a short term of imprisonment, and petitioner made a brief statement urging leniency. Petitioner was sentenced to five to fifteen years imprisonment. At oral argument, counsel for petitioner represented to the Court that petitioner was no longer incarcerated but had been released on parole.

The superior court made comprehensive findings and conclusions after the post-conviction relief hearing. The findings most important to this appeal were the following: there was no plea agreement prior to petitioner's guilty plea; the plea was entered voluntarily; counsel for petitioner read the presentence investigation report and the psychological report, including the handwritten statement by petitioner; one of petitioner's attorneys testified at an earlier hearing that there had been a plea agreement, but later changed his testimony to indicate that there had been no plea agreement; petitioner's attorneys spent hundreds of hours working on the case and both were experienced in criminal defense cases. The trial

court also noted that the version of V.R.Cr.P. 32 (c) (3) in effect during petitioner's sentencing required only that defendant's *counsel* be permitted to review the presentence report prior to sentencing; this was done.

The pertinent conclusions by the trial court were as follows: petitioner's counsel adequately represented his interests and provided effective assistance; petitioner was not denied his right of allocution; there were no objective facts justifying petitioner's subjective opinion that if he went to trial on manslaughter he could be convicted of first degree murder; and petitioner's plea was made knowingly and voluntarily.

On appeal, petitioner argues that the lower court committed error when it found that his plea was entered knowingly and voluntarily and that defense counsel had provided reasonably competent legal services. He also argues that he was effectively denied his right to allocution.

## I.

## A.

Petitioner's argument that his plea of guilty to manslaughter was entered involuntarily and unknowingly, thus violating his Fifth and Sixth Amendment rights, is premised on an alleged plea agreement of which both he and the court were ignorant. Furthermore, petitioner maintains that he had a reasonable mistaken belief that if had he elected to go to trial on the charge of manslaughter, he could have been found guilty of first degree murder. Finally, petitioner reasons that, since the court below was unaware of the alleged plea agreement, he was never questioned about its terms as required by V.R.Cr.P. 11 (e), and, therefore, the court never discovered his alleged misunderstanding about a potential first degree murder conviction.

■ ■ Petitioner's argument quickly collapses when it is perused. The court below specifically found that there was no plea agreement and that the State's decision to amend the charge from first degree murder to manslaughter was unrelated to petitioner's change of plea. The trial court was able to hear all of the evidence and to assess the credibility of the witnesses. We have noted that we will yield to the judgment

of the trial court where there is conflicting evidence at a post-conviction petition hearing. *In re Fuller,* 135 Vt. 575, 579, 381 A.2d 1056, 1059 (1977). The only evidence supporting the existence of a plea agreement was the recanted testimony of one of the defendant's lawyers, at a hearing on May 1, 1981, and testimony that there had been plea agreement negotiations. Since that time the witness has consistently maintained that there was no plea agreement. Furthermore, mere evidence of plea negotiations cannot by itself support a finding that there was a plea agreement. See V.R.Cr.P. 11(e).

■ As we have already observed, we will defer to findings made by the superior court on hearings for post-conviction relief petitions where the evidence is conflicting. *Fuller, supra.* This is similar to our review of findings under V.R.C.P. 52(a). In this case the prosecutor, the petitioner, petitioner's counsel and the record all indicate that there was no plea agreement. We find no error with the trial court's finding of no plea agreement.

B.

■ Since there was no plea agreement, we next turn to petitioner's argument that he mistakenly believed that if he went to trial on manslaughter he could be convicted of first degree murder. If true, petitioner's plea would have been involuntarily and unknowingly entered. Both the State and the defense agree that such an alleged misunderstanding may not be based solely on the petitioner's subjective misunderstanding but must be based on objective evidence which reasonably produced the misunderstanding. See *In re Newton,* 125 Vt. 453, 458, 218 A.2d 394, 398 (1966). Withdrawal of a guilty plea will not be allowed for a subjective mistake absent some objective evidence reasonably justifying the mistake. *United States* v. *Robertson,* 582 F.2d 1356, 1367 (5th Cir. 1978). In *United States ex rel. Robinson* v. *Housewright,* 525 F.2d 988, 991–92 (7th Cir. 1975), the court noted that "[w]e deem it preferable to base an analysis upon objective record facts rather than upon the defendant's recital of what he now claims were his subjective mental impressions." The reason for requiring the defendant to produce objective proof reasonably justifying his mistaken impression is that "[o]therwise

every plea would be subject to successful attack." *Toler* v. *Wyrick,* 563 F.2d 372, 374 (8th Cir. 1977). Thus, we must determine if petitioner's mistaken belief that he might be found guilty of first degree murder if he went to trial on manslaughter, when judged by objective evidence, was reasonably justified under the circumstances.

■ At the outset, we note the following finding by the trial court: "The Petitioner was not told by his attorneys that if he went to trial for manslaughter he could be convicted of the greater offenses of first or second degree murder." Petitioner contends that since he has consistently testified as to his mistaken belief we should accord this testimony "objective" weight. This is the most specious of arguments. Nothing could be more subjective than petitioner's own testimony about what he thought, unsupported by reference to specific circumstances or persons. We will accord no objective weight to such testimony. Next, petitioner argues that "[i]t takes only minimally confused reasoning to transpose 'you can plead to a reduced charge of manslaughter or go to trial on murder one and possibly be convicted' into 'you can plead to a charge of manslaughter but if you go to trial, you might be convicted of murder one.'" While perhaps a logical truism, the limits of what might be confusing are irrelevant. This in no way satisfies the requirement of objective evidence of reasonable confusion. Petitioner also argues that because one of his attorneys once testified that there had been a plea agreement and then later changed that testimony, petitioner must have been confused. This statement, even if true, is a non sequitur and not linked to the issue; petitioner must show evidence reasonably justifying his mistaken belief about going to trial on manslaughter. Petitioner has not carried this burden. We must affirm the trial court's conclusion that petitioner's plea was knowingly and intelligently entered.

## II.

Petitioner next argues that he was denied effective assistance of counsel when his attorneys failed to point out the

presence of the handwritten statement[1] he made while he was being evaluated at St. Albans prior to sentencing. Petitioner reasons that since his attorneys failed to point out the presence of this statement before sentencing, he was denied due process of law.

Petitioner attempts to apply the current version of V.R.Cr.P. 32(c)(3) to a 1977 hearing. The current version of the rule requires the sentencing court to "disclose to the *defendant* . . . all information submitted to it for consideration at sentencing." V.R.Cr.P. 32(c)(3) (emphasis added). Under the prior rule, in effect during petitioner's sentencing, disclosure to *defendant's attorney* would suffice. The statement in question was disclosed to petitioner's attorney prior to sentencing; we decline to apply the current rule to that situation, and we find that V.R.Cr.P. 32 was complied with before sentencing. Cf. *In re Murray*, 131 Vt. 4, 5, 298 A.2d 835, 836 (1972) (validity of guilty plea is judged by constitutional standards in effect at the time).

Even though disclosure of the statement to petitioner was not required by V.R.Cr.P. 32, he maintains that the failure of his attorneys to do so amounted to ineffective assistance of counsel. He relies on *Gardner* v. *Florida*, 430 U.S. 349, 360 (1977), for the proposition that a defendant has a due process interest in knowing what information a sentencing court has before it. In *Gardner*, however, the presentence investigation report was given neither to the defendant nor to his attorney. That situation differs significantly from the instant case where petitioner's attorneys were given the report prior to sentencing. There was evidence that the statement was not particularly upsetting to petitioner's attorneys and was indeed consistent with their client's ongoing attitude. There is also evidence that the attorneys consistently and vigorously urged petitioner to show remorse before sentencing. The trial court found that counsel had read the report and discussed its contents with petitioner; it also found that the material from St. Albans was not challenged as inaccurate.

---

[1] The damaging part of the statement was that petitioner indicated the first thing he would do upon reentering society would be "to get (expletive deleted) drunk."

■ ■ Under the circumstances we cannot say that ineffective counsel deprived petitioner of due process of law. *In re Kasper*, 142 Vt. 31, 35, 451 A.2d 1125, 1126 (1982) (citing *In re Cronin*, 133 Vt. 234, 238–39, 336 A.2d 164, 167–68 (1975)), establishes the standard for ineffective assistance of counsel to be " 'reasonable competence' as measured by the prevailing standards in the conduct of the defendant's case." Petitioner has presented no evidence on the standard of competence, at the time, relative to disclosure of a specific part of a presentence investigation report to the defendant. From the record and the findings, we are unable to find ineffective assistance of counsel as alleged by petitioner.

## III.

Finally, petitioner argues that by not knowing that the sentencing court had before it the handwritten statement made by him during the St. Albans' evaluation, he was unable to exercise his right of allocution effectively. V.R.Cr.P. 32(a)(1). After admitting that he did personally address the court before sentencing, petitioner alleges "a fundamental error in the sentencing proceeding" since he was unable to respond to the particular handwritten statement. We agree.

The record indicates that petitioner personally addressed the court before sentence was imposed; he expressed some remorse and asked for leniency. Facially, this complies with V.R.Cr.P. 32(a)(1). The crux of petitioner's argument, however, is that if he knew the handwritten statement was before the court, he would have addressed the court differently because of its prejudicial effect.

This is apparently an issue of first impression in Vermont. Neither the parties' briefs nor our own research reveal a Vermont case on allocution, either at common law or under V.R.Cr.P. 32(a)(1). Although we may look to other jurisdictions for guidance, the right of allocution in Vermont now derives solely from V.R.Cr.P. 32(a)(1). The cases from other jurisdictions usually address whether or not a defendant was afforded an opportunity to speak prior to imposition of sentence, see Annot., 96 A.L.R.2d 1292, §§ 7, 8 (1964); 21 Am. Jur. 2d *Criminal Law* § 531, rather than the quality or meaningfulness of the allocution. In the instant appeal, we note

that petitioner has alleged both a lack of knowledge that prejudicial material was before the sentencing court and actual prejudice affecting his sentence.

Some years ago, the United States Supreme Court addressed a question relating to allocution under F.R.Cr.P. 32(a).[2] In *Green* v. *United States*, 365 U.S. 301 (1961), the trial court asked, "Did you want to say something?" to which only defendant's attorney replied. Some years later, defendant moved to vacate the sentence because he had not personally addressed the court prior to sentencing. The Court rejected the government's argument that the rule was satisfied when defendant's counsel spoke: "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.* at 304. After observing the importance of allocution, however, a plurality of the Court held that the trial judge's question "may well have been directed to the defendant and not to his counsel," and found no error. *Id.* Justice Black, joined by Chief Justice Warren and Justices Douglas and Brennan, dissented and would have remanded for resentencing. *Id.* at 311. Justice Black concluded that "[a] rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement." *Id.* We agree with the spirit of Justice Black's dissent and will not make allocution under V.R.Cr.P. 32(a)(1) a hollow right. The right of a defendant to address the sentencing court in person may well be of inestimable impact in a particular case.

In the instant case, the court had before it a presentence investigation report, some psychological test results, including the handwritten statement, and knowledge of petitioner's

---

[2] The rule under review provided: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." *Green* v. *United States*, 365 U.S. 301, 303 n.1 (1961) (quoting F.R.Cr.P. 32(a)). The version of V.R.Cr.P. 32(a)(1) in effect during petitioner's sentencing provided: "Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment."

guilty plea to a charge of manslaughter. Collectively, this information sheds only a modicum of light on petitioner's character so as to enable the court to weigh the options of counseling, rehabilitation and incarceration. A *meaningful* opportunity for the defendant himself to address the court, prior to sentencing, takes on even greater importance when viewed in this context. A defendant's own statement may provide a most valuable insight into his character at a time of great value to the sentencing court.

Based upon the facts of this case, we feel that petitioner was unable to exercise his right of allocution in a meaningful way. He had no knowledge that the statement was before the court,[3] neither the court nor counsel questioned petitioner about the statement, and there is evidence of actual prejudice in his sentencing. Allocution in Vermont is not to be an empty act. As urged by Justice Black in *Green,* we will rigorously enforce a defendant's right of allocution under circumstances such as these.

*Affirmed as to the plea of guilty. The sentence is vacated and the cause remanded to the Orleans Superior Court for resentencing.*

---

[3] As noted in § II, *supra,* under the current version of V.R.Cr.P. 32 (c) (3) the court is required to disclose to the defendant *all* information considered by it in sentencing. This rule is more apt to assure the effective exercise of allocution by a defendant today.