## Concerning Justice William C. Hill

[545 A.2d 1019]

No. 88-112

Present: **Dooley and Mahady, JJ., and Shangraw, C.J. (Ret.), Keyser, J. (Ret.) and Connarn, D.J. (Ret.), Specially Assigned**

Opinion Filed March 16, 1988

*Alan B. George* of *Carroll, George & Pratt,* Rutland, for Petitioner.

*Richard E. Davis* and *Christopher T. Greene* of *Richard E. Davis Associates, Inc.,* Barre, and *Leonard F. Wing, Jr.,* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Respondent.

*Douglas Richards,* Springfield, and *William J. Donahue,* White River Junction, Special Counsel to Judicial Conduct Board.

*Carl H. Lisman* and *Michael Marks* of *Lisman & Lisman,* Burlington, for Justice Hill.

*Jeffrey L. Amestoy,* Attorney General, and *Phillip J. Cykon,* Assistant Attorney General, Montpelier, for amicus curiae State of Vermont.

**Per Curiam.** This case involves two petitions filed in this Court with respect to the testimony of former Assistant Judge Jane L. Wheel in the Judicial Conduct Board proceeding against Justice William C. Hill. Some of the events leading up to these petitions are set forth in *Hill* v. *Wheel,* 149 Vt. 203, 542 A.2d 274 (1988) (per curiam). Following that opinion, Jane Wheel was convicted of false swearing in the Rutland District Court. She has not yet been sentenced in that proceeding, and post-trial motions are pending.

Evidence is now being taken in the Judicial Conduct Board (the Board) case against Justice William C. Hill, following the expiration of the continuance granted by order of this Court in No. 88-014. Special counsel has subpoenaed Jane Wheel to appear as a witness in that proceeding. Jane Wheel responded to the subpoena in part by filing with this Court a petition for extraordinary relief to prohibit the Board from compelling her appearance and testimony. Following the denial of a temporary order by a Justice of this Court, she appeared before the Board and declined to answer certain questions on the basis of her Fifth Amendment privilege against self-incrimination, despite a ruling by the Board that the questions involved would not elicit privileged responses. The Board has now brought a petition to this Court seeking that

Jane Wheel be held in contempt for refusing to answer the questions put to her.

Both the extraordinary relief petition and the petition for contempt were argued before this Court, essentially on agreed facts. For purposes of the discussion, we will refer to Jane Wheel as the respondent.

The four questions that respondent refused to answer are as follows:*

1. Can you describe your relationship with . . . [Justice Hill]?

2. Judge Wheel, during 1984 and 1985, were you in the habit of going to the Holiday Inn lounge on Friday afternoons with Justice Hill, Judge Hayes, Frank Fee, and talking about court business, over drinks?

3. Did you require Frank Fee to promise you 100 percent personal loyalty before you hired him as clerk of the Chittenden Superior Court?

4. Would you describe your relationship with Judge Delaney?

In each case the Board found that the answer might tend to embarrass respondent in the Judicial Conduct Board proceeding pending against her, but it would not tend to incriminate her with respect to any crime. On this basis, the Board directed respondent to answer each question, and she refused. Following these specific refusals, special counsel outlined over forty areas of inquiry he proposed to pursue and respondent's attorney indicated that she would answer no questions in these areas on the basis of her Fifth Amendment privilege.

In this Court, respondent makes three major arguments why her assertion of privilege must be honored: (1) as the Board found, the answers would tend to prejudice the judicial misconduct case pending against her; (2) the answers would tend to incriminate her with respect to the false swearing case in which she has been found guilty, but in which judgment and sentence have not yet been entered; and (3) the answers would tend to incriminate her with respect to any obstruction of justice prosecution that might be brought against her pursuant to 13 V.S.A. § 3015.

---

* Respondent also refused to answer a fifth question, but the Board ruled that the question would elicit a privileged response and declined to direct her to answer.

The Board denies that she has any privilege or other grounds to refuse because of the effects on her judicial misconduct proceeding and that the answers to the questions she was asked could not tend to incriminate her under any theory. The Board urges us to further rule that any statements made by respondent could not be used in any criminal proceeding under the theory of this Court's decision in *State* v. *Begins*, 147 Vt. 295, 514 A.2d 719 (1986). Special counsel adopts the Board's view and, in addition, asserts that respondent has waived any privilege because of her testimony in the criminal case and her assertion in No. 88-014 that she would testify in the Board proceeding if she obtained a continuance.

■ We hold that based on the theory of *Begins*, the testimony that respondent gives before the Board cannot be used in a criminal proceeding. Before reaching that holding, we emphasize — as did the Board — that Judicial Conduct Board proceedings are not criminal in nature. See *In re Rome*, 218 Kan. 198, 204, 542 P.2d 676, 683 (1975). The purpose under Ch. II, § 36 of the Vermont Constitution is entirely remedial to protect the public from improper conduct by judges. The greatest sanction authorized by § 36 is suspension from office. See also Rules of Supreme Court for Disciplinary Control of Judges 9(1). Thus, respondent cannot incriminate herself with respect to her disciplinary proceeding, and there is no Fifth Amendment privilege with respect to testimony that may prejudice her in the disciplinary proceeding only. See, e.g., *Napolitano* v. *Ward*, 317 F. Supp. 83 (N.D. Ill. 1970). As a recent article about a comparable lawyer's privilege in a disciplinary proceeding noted, "a lawyer who has been given the requisite immunity against criminal prosecution has an obligation to answer questions about his professional conduct even though doing so may render him guilty of professional misconduct. Sanctions for refusal to comply with this obligation include contempt." Hazard & Beard, *A Lawyer's Privilege Against Self-Incrimination in Professional Disciplinary Proceedings*, 96 Yale L.J. 1060, 1070 (1987).

■ We are not persuaded by respondent's argument that the Due Process Clause of the Fourteenth Amendment creates an equivalent to the self-incrimination privilege based on the impact on fair adjudication of her disciplinary proceeding. Respondent emphasizes, for example, that when questioned as a witness, her counsel cannot object to the questions despite the fact that her

testimony may be used against her. However, her testimony must still be admitted in her own Board proceeding to be used against her, and she can object at that time.

It necessarily follows that respondent may not refuse to appear as a witness before the Board. See *McComb* v. *Superior Court*, 68 Cal. App. 3d 89, 95, 137 Cal. Rptr. 233, 236 (1977). Accordingly, the respondent's petition for extraordinary relief to prevent the Board from calling her as a witness must be dismissed. The Board's approach of ruling question by question on respondent's invocation of the privilege against self-incrimination is the proper one unless there is a general ground why the privilege cannot or need not be invoked in these circumstances.

█ We agree with respondent that her privilege with respect to her false swearing case remains alive. Despite the jury verdict against her, the Fifth Amendment privilege is available until the case is fully concluded, including any appeals. See *State* v. *Gretzler*, 126 Ariz. 60, 88, 612 P.2d 1023, 1051 (1980). Nor does the fact that she testified in her criminal trial constitute a waiver of her right to assert the privilege in another forum — here, the Judicial Conduct Board. See *United States* v. *Yurasovich*, 580 F.2d 1212, 1220 (3d Cir. 1978). Further, we are not persuaded that the representations of her counsel to her willingness to testify, made in this Court, constitute a waiver. While we recognize that it may be possible to waive the privilege expressly, or impliedly, by agreement, the waiver of such an important constitutional right must be clear and intentional and cannot be lightly inferred. See *Smith* v. *United States*, 337 U.S. 137, 150 (1949); *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). We have reviewed the record and do not believe that the statements of respondent's counsel meet this standard.

Respondent has demonstrated a risk of further prosecution under 13 V.S.A. § 3015, our obstruction of justice statute. That statute is taken almost verbatim from the federal obstruction of justice statute, 18 U.S.C. § 1503. The federal statute has been interpreted quite broadly. See, e.g., *United States* v. *Jeter*, 775 F.2d 670 (6th Cir. 1985); *United States* v. *Vesich*, 724 F.2d 451 (5th Cir. 1984). It is not incumbent on respondent to demonstrate that she will be prosecuted or that the answer to a question will result in her conviction. The United States Supreme Court has described the standard as follows:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime. But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified and to require him to answer if "it clearly appears to the court that he is mistaken." However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Hoffman* v. *United States*, 341 U.S. 479, 486-87 (1951) (citations omitted). As the Board correctly ruled in this case, at least some of the questions that special counsel intended to ask would offend the privilege under the *Hoffman* standard. But, we need not rule today precisely which questions and answers fall within the privilege because of the nature and scope of the remedy we are announcing.

All parties before this Court have urged us to apply the reasoning of *State* v. *Begins*, thereby affording respondent "functionally, use and fruit immunity with respect to all of her testimony in this case." Respondent agrees that immunity for her would resolve the conflict presented by assertion of her Fifth Amendment rights and the need of the Board to proceed with the proceeding against Justice Hill in an expeditious manner, but seeks full transactional immunity as well as immunity with respect to her

Judicial Conduct Board proceeding. We invited the Attorney General to state a position as amicus on the *Begins* issue. He opposes any judicial grant of immunity on grounds that such grant is unnecessary and premature.

In *Begins*, an individual who had been placed under conditions of probation because of a previous criminal conviction was charged with two counts of violating such conditions. At the same time, criminal charges — based on the same activity involved in the violation of probation proceeding — were pending against the defendant. At the probation violation hearing, defendant moved for a continuance pending the resolution of the criminal charges. The trial court denied the continuance and proceeded with the hearing. Defendant, then, refused to testify at the hearing in order to safeguard her right against self-incrimination. The trial court found defendant in violation of probation.

On appeal, defendant — stressing the State's ability to use her testimony at the probation hearing against her at the criminal trial — argued that it was unfair to force her to choose between her due process rights regarding revocation of probation and the right to remain silent at the ensuing criminal trial. We agreed, and offered two alternative solutions for such cases. The first option is for the trial court to continue the revocation hearing until after the criminal proceeding. The second option is for the defendant to be granted use and fruits immunity regarding any testimony given at a revocation hearing that precedes a criminal trial based on the same activity. *Begins*, 147 Vt. at 298-99, 514 A.2d at 722-23. The second option — which was actually applied in *Begins* — established a judicial rule of evidence. Thus, we softened the " 'hard testimonial choice' " that would require an individual in that situation to select among constitutional protections. *Id.* at 299, 514 A.2d at 723.

In an order issued by this Court on January 15, 1988, we determined that requiring respondent to testify in the Hill matter before the resolution of criminal proceedings then pending against her, created a situation "close enough to *State* v. *Begins*" for us to continue Justice Hill's Conduct Board proceeding until after respondent's criminal trial. *Hill* v. *Wheel*, 149 Vt. at 204, 542 A.2d at 276. That decision was essentially a procedural matter relating to the timing of the two cases. It did not determine the applicability of the principles of *Begins* to this case generally.

We are now confronted with a request to apply the second *Begins* option — the exclusionary rule — to respondent's testimony before the Judicial Conduct Board. This is a more difficult situation than that which we faced in respondent's earlier motion for a continuance.

At oral argument the parties and the Court wrestled with the problem that applying *Begins* in the present setting would violate important principles of separation of powers under the Vermont Constitution. See *Kennedy* v. *Chittenden*, 142 Vt. 397, 457 A.2d 626 (1983); *State* v. *Jacobs*, 144 Vt. 70, 472 A.2d 1247 (1984); *State* v. *Ludlow Supermarkets, Inc.*, 141 Vt. 261, 448 A.2d 791 (1982). In *Begins* the dilemma the probationer faced was that "[t]he State's ability to use at trial a probationer's prior revocation hearing testimony creates an inevitable tension between the right to due process at the revocation hearing and the right to remain silent at trial." 147 Vt. at 298, 514 A.2d at 722. But the "State" in both instances was the executive, not the judicial, branch of government. This Court in *Begins* sat solely as an appellate tribunal and adopted a judicial rule of evidence to resolve the conflict created by the "hard testimonial choice" which probationer faced. By contrast in the present case, the Judicial Conduct Board sits in the name of the Supreme Court of Vermont. See Rule 4(1), Supreme Court Rules for Disciplinary Control of Judges; *In re William C. Hill*, 88-112, order of March 10, 1988 (citing *In re "Judge Anonymous,"* 590 P.2d 1181, 1189 (Okla. 1978)). And any criminal prosecution of respondent, current or future, will be brought by the Attorney General as an officer of the Executive Branch. Hence, at least the inference might be raised that this Court's zeal to promote the Judicial Conduct Board proceeding might give too little weight to the interests of the Attorney General as the State's chief prosecutor.

The potential conflict is unavoidable. In nearly every appeal that concerns the exercise of government power, the judicial review itself implies a mode of dispute resolution in which the Court acts as final arbiter, though the Court itself is one of the pillars of the very tripartite system of government which may have given rise to the dispute. See *Provost* v. *Betit*, 326 F. Supp. 920 (D. Vt. 1971); *Beecham* v. *Leahy*, 130 Vt. 164, 287 A.2d 836 (1972). The conflict has not weakened the principle of separation of powers during the nearly 200 years of Vermont statehood, but has strengthened it. The reason it has functioned so well is the

basis for our decision today: The strong tradition of self-restraint and the imperative rule that no order be framed more broadly than necessary to serve the interests of justice and solve the conflicts before the Court. *State* v. *Ludlow Supermarkets, Inc., supra.* This principle of self-limitation is unyielding, whether the conflict involves a special area of interest for the Court — as in the present case — or not.

Despite the inherent conflict, this Court alone can address the dilemma posed by the lack of contempt power in the Board and the right of a witness before the Board to assert his or her privilege against self-incrimination. The Constitution places with this Court the responsibility to assure the integrity of the Vermont Judiciary. See Vermont Constitution Ch. II, § 30. Our instrumentality to discharge this important and weighty responsibility is the Judicial Conduct Board. In order to discharge the Constitutional imperative, it is crucial that the Board be able to ascertain truth in an environment unfettered by extraneous concerns of its witnesses. It is our responsibility both to the public we serve and to the judges and justices who come before the Board to ensure that the truth-finding process works fully and fairly.

This case points out the inherent impediments to the discharge of the Constitutional responsibility. The Board cannot enforce its subpoena without our assistance. If we hear an appeal from each Board ruling, we are being asked to become a de facto overseer of the Board's evidentiary rulings, rendering opinions on a continuing basis as to the exercise of constitutional rights by witnesses before the Board. See *In re Hill,* 149 Vt. 86, 539 A.2d 992 (1987). We find this prospect unworkable and unacceptable, since neither we nor the Board could meet "[t]he constitutional command to the courts of this State . . . to administer justice promptly and without unnecessary delay." *Granai* v. *Witters,* 123 Vt. 468, 470, 194 A.2d 391, 392 (1963).

Accordingly, we hold that circumstances are present in this case like those that led to the exclusionary rule in *Begins* and that a similar exclusionary rule is applicable in disciplinary proceedings before the Judicial Conduct Board. Thus, when a witness in such a proceeding asserts his or her Fifth Amendment privilege against self-incrimination, such witness may be compelled to testify, but will be protected by use and fruits immunity. The State may not use such testimony as a springboard to a future criminal proceeding. And, in the event that criminal

charges are forthcoming, the witness may object to the introduction of any evidence taken or derived from his or her testimony before the Board. The burden will then be on the State to demonstrate an independent source for such evidence. Cf. *Begins*, 147 Vt. at 300, 514 A.2d at 723. Certainly, however, a witness' testimony may be used to impeach his or her testimony at a subsequent trial or may be used in the event that perjury proceedings result. Cf. *id.*

We emphasize that we are not extending *Begins* to apply in this case, but rather, we adopt the *remedy* announced in *Begins* to meet the exigencies of the present case.

In view of our disposition of this case, it would be premature to act on the Board's request to hold respondent in contempt. Under this decision, the Board can require respondent to testify. This testimony will be given under our holding that neither it nor its fruits can be used in any future criminal proceeding or the continuation of the current proceeding. Thus, any valid impediment to respondent's testifying is removed.

Respondent has acted in good faith and on advice of counsel in asserting her privilege against self-incrimination in this case. Thus, the need for the contempt remedy has been removed. Accordingly, we deny the relief requested at this point and retain jurisdiction for 30 days should there be any need for our further intervention.

*The extraordinary relief petition brought by Jane Wheel is dismissed. In the petition initiating proceedings for contempt brought by the Judicial Conduct Board, the request to hold Jane Wheel in contempt of this Court is denied and jurisdiction is retained for 30 days.*