# State of Vermont v. Trent Saari
# State of Vermont v. Patrick Branch

[568 A.2d 344]

Nos. 86-511 and 86-512

Present: Allen, C.J., Peck, Gibson,[1] Dooley and Mahady, JJ.

Opinion Filed September 15, 1989

---

[1] Justice Gibson was present at oral argument but did not take part in the decision.

*Shelley A. Hill,* Windsor County State's Attorney, White River Junction, for Plaintiff-Appellant.

*Walter M. Morris, Jr.;* Defender General, and *Henry Hinton,* Appellate Defender, Montpelier, for Amicus Curiae.

**Peck, J.** In this appeal, the State consolidated two misdemeanor cases, one a driving offense and the other a simple assault on a police officer. In each case, the trial judge ignored the minimum sentence mandated by the legislature, and imposed a lesser sentence, finding that the statutory minimum sentences violated the proportionality clause of Vermont's constitution and violated defendants' rights to allocution. The State filed motions to reconsider the sentences, but the trial court denied the motions. The State appeals from the denial of these motions. We consider the issue as a petition for extraordinary relief and deny the relief requested, although we conclude the trial court's actions were erroneous.

Defendant Saari pled guilty to driving with a suspended license, in violation of 23 V.S.A. § 674(a). The suspension was based on an earlier conviction for driving while under the influence (DUI). Although 23 V.S.A. § 674(c)(1) mandates a two-day minimum sentence for such an offense, the court imposed a 0–30 day sentence, all suspended. Defendant Branch pled nolo contendere to simple assault on a police officer, in violation of 13 V.S.A. § 1028, and to two other misdemeanors. The court imposed identical and concurrent sentences of 0–3 months, all suspended, and placed the defendant on probation. The relevant statute, however, mandates a minimum thirty-day sentence for simple assault on a police officer. 13 V.S.A. § 1028(a)(1).

Because important issues were raised in these appeals and defendants appeared pro se and did not file a brief in this Court, we requested the Defender General to submit a brief as amicus curiae in support of the trial court decisions. We appreciate the Defender General's response to our request.

I.

Jurisdictional Issues

In filing its appeal, the State relies on V.R.A.P. 4(9) as reflecting, if not creating, a right in the State to appeal the trial court's denial of its motions to modify the sentences. Amicus argues that the State's motion to reconsider sentence in *State v. Saari* should have been denied as untimely and no appeal to this Court allowed. Defendant Saari was sentenced on July 15, 1986. The State filed a motion to reconsider sentence on July 24, 1986, nine days after imposition of sentence. The State is required, under 13 V.S.A. § 7042(b), to file a motion to reconsider within seven days of imposition of sentence. We note, however, that the State's notice of appeal in each action was filed on August 2, 1986, within thirty days of the sentences, and was timely. V.R.A.P. 4. The timeliness of the post-conviction motion is insignificant in this instance, given our characterization of the appeal as a petition for extraordinary relief, and we will not, on those grounds, dismiss the case.

While it is true that V.R.A.P. 4(9) refers to an appeal of an order granting or denying a motion to modify a criminal

sentence, as attempted here, the purpose of the provision is to set time limitations for filing notices of appeal, not to create rights of appeal in either party. V.R.A.P. 4 is the procedural framework for appeals "permitted by law as of right." The sole legal authority for criminal appeals by the prosecution to this Court under Rule 4 is provided in 13 V.S.A. § 7403. At one time, § 7403 provided only for interlocutory appeals, in both felony and misdemeanor cases, and then only on the condition that the State's exceptions were "allowed and placed upon the record before final judgment." 13 V.S.A. § 7403 (1947). These limitations reflected the protections of the double jeopardy clause. *State v. Velander*, 123 Vt. 60, 61, 181 A.2d 60, 61 (1962). In 1982, the opportunity for the State to appeal in felony cases was expanded by a revision of the statute which differentiated between misdemeanors and felonies. 13 V.S.A. § 7403. The limitations on the State's ability to appeal final rulings in misdemeanor cases remains the same: only interlocutory appeals are allowed. Neither the sentence nor the decision on a motion to reconsider sentence are prejudgment, interlocutory orders. Thus appeals by the State in *Saari* and *Branch* are not allowed by the statute.

If the State's attempted appeal ran afoul of the double jeopardy clause of the United States Constitution, we would look no further to exercise jurisdiction. There is, however, no constitutional bar to the State's appeal of a sentence it believes is beyond the lawful authority of the trial court. *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980) ("The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.").

Although no statute confers appellate jurisdiction in this case, the State may avail itself of our jurisdiction through a petition for extraordinary relief. V.R.A.P. 21. Extraordinary relief provides the proper avenue for redress where no other relief exists. *Crabbe v. Veve Assoc.*, 145 Vt. 641, 643, 497 A.2d 366, 368 (1985).

Among the writs consolidated in the extraordinary relief rule is mandamus, see V.R.A.P. 21(a), which "will lie for the enforcement of a purely ministerial act, that is, an act 'regarding which

nothing is left to discretion . . . .' " *Bargman v. Brewer*, 142 Vt. 367, 369, 454 A.2d 1253, 1255 (1983). Vermont courts have not had occasion to use mandamus to review a sentencing order; such orders are traditionally within the court's discretion. V.R.Cr.P. 32, 35.

■■ Mandamus is appropriately invoked " 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority w ' en it is its duty to do so' . . . . [but] only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967) (mandamus denied; improper review of discovery order requested) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943), and *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945)); see also *Ex parte United States*, 242 U.S. 27, 39–40 (1916); *United States v. Denson*, 588 F.2d 1112, 1129 (5th Cir. 1979) (court denied review of sentence brought by petition for writ of mandamus); *United States v. Hundley*, 858 F.2d 58, 66 (2d Cir. 1988) (motion to set aside sentence denied). We hold that the trial court stepped outside its authority by rejecting the applicable sentencing statute. Therefore, extraordinary relief in the nature of mandamus is an appropriate vehicle for review. See *Roche v. Evaporated Milk Ass'n*, 319 U.S. at 26 (considerations guiding judicial discretion in use of mandamus include whether act was within trial court's jurisdiction or tended to thwart appellate review of ruling); *United States v. Jackson*, 550 F.2d 830, 831 (2d Cir. 1977) (petition for mandamus granted to review sentence and case remanded).

A petition for extraordinary relief is normally presented to this Court with an allegation, supported by affidavit, stating that no adequate remedy is available through the superior court. V.R.A.P. 21(b); see *Reed v. Department of Public Safety*, 137 Vt. 9, 11, 398 A.2d 301, 303 (1979). This was not done here. But this Court may, on its own motion, "suspend the requirements or provisions of any of these rules in a particular case" for good cause. V.R.A.P. 2; see *In re Smith*, 131 Vt. 24, 25, 298 A.2d 823, 825 (1972). We will do so here because of the impor-

tance of the issue and because no further facts are necessary in order to consider the merits of the issues raised.

## II.

## Proportionality of Statutory Minimum Sentences

The argument proffered by amicus, and suggested by the trial court's ruling, is that minimum sentences are disproportionate per se and thereby violate the Vermont Constitution. Vt. Const. ch. II, § 39. When this issue was raised sua sponte by the trial court, it did not suggest on what basis the statute is disproportionate. Amicus refers to the fact that some crimes, considerably more heinous than driving with a suspended license, have no required jail sentence.[2] See *Solem v. Helm*, 463 U.S. 277, 292 (1983) (federal disproportionality test includes consideration of other sentences imposed within the jurisdiction). We do not take that fact, alone, as evidence that the statutes are unconstitutional. The legislature is entitled to make incremental changes in the statutes of this state, including the sentencing structure. See *State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 265, 448 A.2d 791, 793 (1982) (regulatory legislation is not unconstitutional where "unbalanced impact is . . . a necessary consequence of the most reasonable way of implementing that policy"). "The peace of the State and the welfare of [the] community often require the Legislature to create new offenses and to prescribe fines for their punishment, and to alter fines already prescribed." *State v. Constantino*, 76 Vt. 192, 196, 56 A. 1101, 1101 (1903).[3] The severity of the sentence for any given crime is meant to be an amalgam of "public attitudes . . . history and precedent, legislative attitudes, and the response of [previous] juries." *Coker v. Georgia*, 433 U.S. 584, 592 (1977).

Furthermore, this claim seems not to fall squarely under the tripartite federal test for gross disproportionality. See *State v. Venman*, 151 Vt. 561, 572, 564 A.2d 574, 581 (1989) (citing *Solem*

---

[2] Amicus cites to twelve crimes, from arson to murder, in which the statutory minimum sentence may be waived.

[3] The term "fines," as used in the Vermont Constitution, has been equated with other punishments for purposes of proportionality clause analysis in Vermont. See *State v. Burlington Drug Co.*, 84 Vt. 243, 249, 78 A. 882, 884 (1911).

*v. Helm*, 463 U.S. at 292) (gravity of the offense and the harshness of the penalty; sentences imposed on other criminals in the same jurisdiction; sentences for same crimes in other jurisdictions). The court in *Smith v. Municipal Court*, 78 Cal. App. 3d 592, 596, 144 Cal. Rptr. 504, 506 (1978), specifically noted the "misconception" that disproportionality considerations require "the judiciary [to act as] supervisors of penological symmetry," and upheld California's mandatory minimum sentence for use of controlled substances because "it is of such short duration that it cannot be deemed substantially excessive to fulfill the legitimate penological objectives of deterrence and isolation, considering the seriousness of the problem . . . ." *Id.* at 598, 144 Cal. Rptr. at 507. Much the same statement might be made regarding the magnitude of the penalties at issue here in comparison to the severity of the problems of drunken driving and assault on police officers.

We have noted that the legislature has broad latitude to make changes in the penal code which address the community's concerns with lawless behavior. See *id.* at 596, 144 Cal. Rptr. at 506 (mandatory minimum ninety-day sentence for use of heroin was not "*so* disproportionate as to *shock the conscience* and offend *fundamental notions of human dignity*") (emphasis in original); *People v. Gomez*, 120 Ill. App. 3d 545, 548, 458 N.E.2d 565, 567 (1983) (mandatory minimum four years incarceration for residential burglary not disproportionate under state constitution where legislation would not shock the moral sense of the community); *Norris v. State*, 271 Ind. 568, 575–76, 394 N.E.2d 144, 150 (1979) (mandatory life sentence for "habitual criminal" not grossly out of proportion to the severity of the crime).

The dissent contends that minimum sentencing standards are inconsistent with Vermont's tradition of evaluating punishment for proportionality with the crime, referring to the Council of Censors which prevented such eighteenth-century atrocities as mutilation of the convict. While we appreciate the tradition, we feel the analogy is somewhat out of scale. Furthermore, we note that the suggestions of the Council were given force and effect only through adoption by the legislature, much as sentence re-

forms are currently made through committee study and suggestion to the General Assembly.[4]

Moreover, the penalties imposed under these statutes are of the same magnitude as minimum penalties previously imposed for these crimes. See 23 V.S.A. § 674 (present subsection (a), rewritten in 1981, sets penalty for the first DLS offense at thirty days and/or $500); 13 V.S.A. § 1024(c) (physical injury caused with intent to prevent law officer from performing lawful duty, penalty set at five years and/or $5000). We infer from the trial court's ruling that it did not feel that sentences of two days' imprisonment for DLS based on a DUI conviction and thirty days for aggravated assault of a police officer were of unconstitutional magnitude. Instead, its concern appears to be that the sentences are required, with no room for the trial court to decide to not impose it. Mandatory minimum statutes narrow the court's discretion.

Viewed in this way, the issue becomes one of whether the legislature has wrongly usurped the prerogative of the trial courts to determine sentences. This issue, framed as a violation of the separation of powers doctrine,[5] is squarely raised on appeal by amicus curiae; we will consider it because it is adequately briefed and no factual development is necessary to aid our determination of the legal issue.

## III.

### Separation of Powers

■ The separation of powers doctrine was raised in a challenge to "determinative-sentence guidelines" in *Mistretta v. United States*, 488 U.S. 361, 370, 109 S. Ct. 647, 653 (1989). The United States Supreme Court rejected that argument, noting that "[h]istorically, federal sentencing—the function of determining the scope and extent of punishment—never has been

---

[4] Contrary to the arguments of amicus curiae, legislative involvement in sentencing does not necessarily result in inflated penalties or irrationally harsh sentences. One trend is to write legislative standards for a presumptive sentence in each criminal category. 3 W. LaFave & J. Israel, Criminal Procedure § 25.2, at 124–26 (1984).

[5] Vt. Const. ch. II, § 5 (legislative, executive and judicial departments shall be distinct).

thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of government." *Id.* at 650.[6] It is true in Vermont, as in other states, that the judicial branch does not have exclusive constitutional authority for sentencing criminals. See *State v. Bushway*, 146 Vt. 405, 408, 505 A.2d 660, 662 (1985) (sentences of trial court must be within limits set by law); see also cases upholding mandatory minimum sentences in other states: *Smith v. Municipal Court*, 78 Cal. App. 3d at 600, 144 Cal. Rptr. at 509; *People v. Gomez*, 120 Ill. App. 3d at 548, 458 N.E.2d at 567; *Norris v. State*, 271. Ind. at 575–76, 394 N.E.2d at 150. The jurisdiction of the trial courts is shaped by the legislature, Vt. Const. ch. II, § 31 ("courts . . . shall have . . . jurisdiction as provided by law"), and the power to define the appropriate sentence is shared by the courts with the legislature, which traditionally has set minimum and maximum sentences, as well as with the executive, which, as amicus curiae points out,[7] has the prerogative to select the charge and request a specific sentence.

■ Sentencing is not, therefore, solely a judicial function derived from constitutional mandates. Cf. *In re Hill*, 149 Vt. 431, 438–39, 545 A.2d 1019, 1024 (1988) (specific constitutional mandate to assure the integrity of the judiciary required empowering the Judicial Conduct Board with prosecutorial

---

[6] *Mistretta* considered the constitutionality of the United States Sentencing Commission, an "independent commission" placed in the judicial branch. That the commission is categorized as part of the judiciary is not, however, grounds for distinguishing that case from the one at bar. Congress created the commission, determined its mission, and rendered it "fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit . . . ." 488 U.S. at 393–94, 109 S. Ct. at 665–66.

[7] Amicus curiae frames the separation of powers argument in order to claim that mandatory minimums are actually an infringement by the *executive* branch on the powers of the judiciary because only the executive can mitigate the penalty by selecting the charge, such as charging simple assault instead of assault on a police officer. We are not persuaded by this argument. The infringement issue is raised here by the subject legislation, not by any action of the prosecution. While we would agree that control of sentencing by the executive branch is generally unacceptable, in practice the executive has a hand in determining the sentence served by criminals through plea bargaining, parole review and selective prosecution.

powers, despite inherent overlap with the prosecution power of the executive); *Solomon v. Atlantis Development, Inc.*, 145 Vt. 70, 73, 483 A.2d 253, 256 (1984) (legislative interference with determination of retroactivity of court decision was unconstitutional violation of the separation of powers principle). It is not a violation of the doctrine for the legislature to curb judicial discretion in this area. See *United States v. Connolly*, 618 F.2d 553, 555 (9th Cir. 1980) (where mandatory sentence included parole, "court had no discretion not to impose it"). As stated by the United States Supreme Court in a case upholding statutory minimum sentences against a due process challenge: "We have some difficulty fathoming why the [constitutional] calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance." *McMillan v. Pennsylvania*, 477 U.S. 79, 92 (1986).

██ ██ "As we have consistently held, where the meaning of a statute is plain and unambiguous, we are required to enforce it according to its terms, without resort to statutory construction." *In re Hough*, 143 Vt. 15, 19, 458 A.2d 1134, 1136 (1983). The language of 23 V.S.A. § 674(c) and 13 V.S.A. § 1028(a)(1) and, therefore, the limits of the court's discretion, are clear. Section 674 was amended in 1982 to add subsection (c), which states in part: "a person who violates a provision of this section . . . shall be sentenced to, and shall serve, the following minimum terms . . . ." 1981, No. 229 (Adj. Sess.), § 3. Likewise, 13 V.S.A. § 1028(a) states: "A person convicted of a simple or aggravated assault against a law enforcement officer . . . shall: (1) For the first offense, be imprisoned for not less than thirty days nor more than one year . . . ." The intent of the legislature is also clear: minimum sentences are to be served for each of these misdemeanors. See *State v. Peters*, 141 Vt. 341, 348, 450 A.2d 332, 336 (1982) (legislature intended increased penalties for assault under 13 V.S.A. § 1028). The trial court's decisions ignore these directives and, by doing so, not only thwart the purpose of the statutes but exceed the court's lawful authority.

Furthermore, we note that there is no conflict between the sentencing statutes at issue here and V.R.Cr.P. 32. The rule regarding the sentencing discretion of the courts is procedural,

and refers only to the range of discretion permitted by statute. The legislature has not granted the discretion claimed here by the trial court.

## IV.

### Allocution

The trial court also ruled that statutory minimum sentences violated defendants' rights to allocution provided by Chapter I, Article 10 ("a person hath a right to be heard by himself and his counsel") of the Vermont Constitution. We disagree with the trial court's constitutional derivation of this right. See *Hill v. United States*, 368 U.S. 424, 428 (1962) (failure to inquire if defendant would make statement in his own behalf is neither jurisdictional nor constitutional error); see also Reporter's Notes, V.R.Cr.P. 32, at 147. The provision of our constitution selected by the trial court as the source of this right has never previously been stretched to encompass it. See *Brine v. State*, 160 Me. 401, 402–03, 205 A.2d 12, 13 (1964);[8] cf. *In re Virgil M.*, 46 Md. App. 654, 657, 421 A.2d 105, 107 (1980) (allocution a statutory right based on common law); *State v. Cerce*, 46 N.J. 387, 396, 217 A.2d 319, 324 (1966) (allocution not a constitutional right). The court's interpretation of Article 10 as including allocution is unfounded. Article 10 refers to defendants' rights to testify in their own behalf, which are separate from their rights of allocution. See *State v. Brunelle*, 148 Vt. 347, 353, 534 A.2d 198, 203 (1987).

The principle of allocution, which gives defendants in our courts the opportunity to address the bench prior to sentencing, is a tradition of the common law which developed when death was the penalty for felony convictions and the accused often was not allowed to testify. 3 W. LaFave & J. Israel, Criminal Procedure § 25.1(f) (1984). We have preserved the practice in V.R.Cr.P. 32. See *In re Stevens*, 144 Vt. 250, 258, 478 A.2d 212, 217 (1984) ("right of allocution in Vermont now derives solely from V.R.Cr.P. 32(a)(1)"). *Stevens* is the only Vermont case de-

---

[8] Maine has a constitutional provision nearly identical to our Article 10, yet *Brine* holds that allocution involves "no matter of jurisdiction or constitutional right." 160 Me. at 402, 205 A.2d at 13. See Me. Const. art. I, § 6.

scribing allocution. There, defendant's opportunity to comment was flawed by important evidence before the trial court of which defendant was unaware. Amicus argues by analogy that mandatory minimum sentences violate the right of allocution because they render it meaningless.

We do not agree. That allocution is statutory and not constitutional means that the legislature can interfere with that right and could even eliminate it, should it choose to do so. Federal courts have indicated that allocution need not obtain where the sentence rendered or reconsidered is fixed by law. *United States v. Connolly*, 618 F.2d at 556.[9]

The opportunity to affect the court's decision is the primary purpose of the right. In the present cases, the trial court was authorized to impose sentences above the statutory minimums. Therefore, it was appropriate that defendants were given an opportunity to speak in their own behalf at sentencing.

## IV.

### Result

The remedy requested by the State is that the cases be remanded for sentencing of defendants in compliance with the appropriate mandatory minimums. That result would require incarceration of both defendants more than three years after the crimes were committed, due to an error on the part of the trial court and delay in this Court. Not only does the requested remedy strike us as unfair, but it also defeats the purposes of punishment by incarceration. See generally III ABA Standards for Criminal Justice § 18-2.2, at 57–67 (2d ed. 1980) (purposes of confinement vary from retribution to rehabilitation to preventing similar future crimes). Moreover, the delay in imposing the appropriate minimum sentence may be interpreted as "deliberate" and, consequently, violative of V.R.Cr.P. 32(a). See Reporter's Notes, V.R.Cr.P. 32, at 147 ("The requirement . . . that

---

[9] At least one jurisdiction has imbued the right of allocution with constitutional protections. See *Warrick v. United States*, 551 A.2d 1332, 1334 (D.C. 1988). Even so, the District of Columbia Court of Appeals has followed the federal rule that the right is not violated where no discretion is exercised by the sentencing judge. *Kerns v. United States*, 551 A.2d 1336, 1337–38 (D.C. 1989).

sentence be imposed or deferred 'without unreasonable delay' has been deemed violated in the federal courts only when the delay is affirmatively shown to have been deliberate and oppressive."). Accordingly, we deny the requested remedy despite our opinion which upholds the mandatory minimum sentences at issue here.

*Extraordinary relief is denied.*

**Mahady, J.,** concurring and dissenting. I concur that the relief sought by the State in these appeals should be denied. I write separately, however, to dissent from the majority's extensive dicta which upholds the constitutionality of the mandatory minimum sentencing provisions involved. The issue is whether the trial court erred in its determination that a legislatively-prescribed mandatory minimum sentence upon conviction violated the defendant's right of allocution and/or the proportionality clause of Chapter II, § 39 of the Vermont Constitution. In each of the cases below, the sentencing judge refused to be bound by the mandatory sentences provided by the applicable statutes. I would hold that the sentencing judge was correct.

## I.

The Vermont Rules of Criminal Procedure provide that "[b]efore imposing sentence the court shall . . . afford counsel an opportunity to speak on behalf of the defendant; and . . . address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information relevant to sentencing." V.R.Cr.P. 32(a)(1)(B)–(C). The rules also provide that "[p]rior to imposing sentence, the court shall afford . . . the defendant and his attorney an opportunity to comment upon any and all information submitted to the court for sentencing." V.R.Cr.P. 32(c)(4).

These Rules implement the guarantee of Chapter I, Article 10 of the Vermont Constitution "[t]hat in all prosecutions for criminal offenses, a person hath a right to be heard by himself and his counsel." Moreover, they provide the criminal defendant an opportunity to defend his liberty. Chapter I, Article 1 of the Vermont Constitution requires "[t]hat all men . . . have certain

natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty . . . ." The right of allocution is therefore fundamental.

The right of allocution is also time honored. "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green v. United States*, 365 U.S. 301, 304 (1961) (citing *Anonymous*, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B.)). Justice Black noted that "[a] rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced . . . , not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement." *Id.* at 311 (Black, J., dissenting). Accordingly, this Court has deemed it appropriate to "agree with the spirit of Justice Black's dissent," stating: "Allocution in Vermont is not to be an empty act." *In re Stevens*, 144 Vt. 250, 259–60, 478 A.2d 212, 217–18 (1984).[1] *Stevens* concluded that the defendant must be afforded a "*meaningful* opportunity . . . to address the court, prior to sentencing." *Id.* at 260, 478 A.2d at 217 (emphasis in original).

A mandatory sentencing statute, however, effectively denies a criminal defendant the right to defend his liberty at sentencing. At best, the defendant might request the mandatory minimum sentence, but no statement made by way of allocution can alter the mandatory sentence. This procedure does not afford the defendant the "*meaningful* opportunity" to defend his liberty emphasized in *Stevens*. Mandatory sentencing provisions such as 23 V.S.A. § 674(c) and 13 V.S.A. § 1028 deny the right of allocution and violate Chapter I, Article 1 of the Vermont Constitution.

## II.

Chapter II, § 39 of the Vermont Constitution requires that "all fines shall be proportioned to the offences." This provision of our state constitution derives from chapter 14 of the Magna Carta. *State v. Burlington Drug Co.*, 84 Vt. 243, 249, 78 A. 882,

---

[1] Our adoption of the Black dissent in *Green* makes it clear that the right of allocution under the Vermont Constitution is more extensive than that guaranteed by the federal Constitution.

884 (1911). Although the constitutional provision refers only to "fines," a contemporaneous authoritative commentator observed that the word "fines" as used therein refers to all forms of punishment. N. Chipman, *Reports & Dissertations* 134 (1792). Relying on that authority, we have previously held that the word "fines," as used in this section, denotes all punishments, whether by fine, imprisonment, forfeiture, or disqualification. *Burlington Drug Co.*, 84 Vt. at 250, 78 A. at 884.

In *Burlington Drug*, we upheld the bond forfeiture there at issue because "the forfeiture of the bond [could not] be said to follow automatically upon a conviction for such an offence." *Id.* at 253, 78 A. at 886. By contrast, the mandatory minimum sentences provided by 23 V.S.A. § 674(c) and 13 V.S.A. § 1028 do follow automatically upon conviction.

This state has a long history of concern over disproportionate penalties. The first Council of Censors, mandated by Vermont's Constitution in 1777 "to enquire whether the Constitution has been preserved inviolate," Vt. Const. 1777, ch. 2, § 44; see *Hartness v. Black*, 95 Vt. 190, 194, 114 A. 44, 45 (1921), was particularly active in condemning harsh penalties prescribed by the legislature.[2] For example, in 1785 the Council recommended repeal of an act prescribing penalties for "riots, disorders, and contempt of authority" because of

> the uncommon severity of the punishments to be inflicted for breaches of said act, and their disproportion to the offenses; it being unjust and impolitic, in the opinion of the Council, as well as contrary to the humanity manifested in the Constitution, to inflict punishments which render a person and his connexions, infamous, and preclude all reformation for crimes which are not infamous in their nature.

Resolutions of the First Council of Censors, No. I, October 5, 1785 (available at Office of Secretary of State). Another resolution recommended repeal of an act which prescribed corporal

---

[2] The Council of Censors were elected first in 1785 and in every septenary thereafter until 1869. In addition to its task of reviewing the constitutionality of legislation, the Council drafted constitutional amendments that were later adopted by constitutional convention.

punishment for removing a wolf from a trap because the punishment was "too severe." *Id.*, No. II.[3] A third requested the legislature "to alter the punishment" in an act designed to curtail counterfeiting, since it was "beyond all proportion" to the offense. *Id.*, No. III, October 6, 1785. In the 1787 session, the General Assembly voted to accept all of these recommendations.

The proportionality clause has been in the Vermont Constitution since its origin. See Vt. Const. 1777, ch. II, § 24. The members of the first Council of Censors were the contemporaries of the delegates at the Windsor Convention of 1777, which adopted the first Constitution. (Indeed, two members of the first Council, Benjamin Carpenter and Joseph Marsh, were in fact members of the Windsor Convention.) Their understanding of the Constitution should therefore be accorded considerable weight. Proportionality between offenses and penalties was deemed then to be a constitutional value worth protecting. It should still be so today.

By force of the statutes at issue here, a person must go to jail if he operates a motor vehicle without a license under these circumstances or if he assaults a police officer (although the assault may be a mere shove). On the other hand, by way of example, a person need not necessarily go to jail if he commits any of the following offenses for which there is no mandatory sentence that may not be suspended; first degree murder, 13 V.S.A. § 2303; aggravated sexual assault, 13 V.S.A. § 3253; first degree arson, 13 V.S.A. § 502; perjury, 13 V.S.A. § 2901; and assault and robbery, 13 V.S.A. § 608. The disproportionate nature of the mandatory minimum sentences that may not be sus-

---

[3] At the same time, the Council of Censors foresaw the fact, obvious in our district courts, that many assaults on police officers would be prosecuted as simple assaults or as offenses of disorderly conduct only. The Council observed that such penalties when prescribed by the legislature "have a direct tendency to prevent the execution of the laws" as a result of the "punishment [being] too severe in their nature for the crimes . . . ." For the same reason, many cases of driving under suspension are prosecuted under traffic tickets for driving without a license, an offense for which the maximum penalty is a fine of $100.

pended provided by 23 V.S.A. § 674(c) and 13 V.S.A. § 1028 is readily apparent.[4]

Of course, sentencing judges may, and do, consider the fact that a license suspension is based upon a conviction for drunken driving or that the person assaulted is a law enforcement officer as aggravating factors when imposing a sentence. Such considerations are both proper and desirable. However, mandatory minimum sentences that cannot be suspended deny defendants their right of meaningful allocution and result in demonstrably disproportionate sentencing structures. As such, they offend the Vermont Constitution and are invalid under our fundamental law.[5]

---

[4] The majority, disregarding the advice of this Court to the Bar, *State v. Jewett*, 146 Vt. 221, 225–27, 500 A.2d 233, 236–37 (1985), disposes of this issue relying primarily upon federal precedents and ignoring state materials. In doing so, it denigrates the primacy and independence of our own state constitution as expressed in *State v. Badger*, 141 Vt. 430, 447–49, 450 A.2d 336, 346–47 (1982). See Linde, E Pluribus—Constitutional Theory and State Courts, 18 Ga. L. Rev. 165 (1984).

[5] The United States Supreme Court has recently upheld under a separation-of-powers challenge the scheme of mandatory federal sentence guidelines promulgated under the 1984 Sentencing Reform Act. *Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647 (1989). The federal guidelines were not challenged on either of the grounds at issue in the instant case. The Idaho Supreme Court has held that mandatory minimum sentences do violate the separation of powers provision of the Idaho Constitution. *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971).