594 A.2d 897 (1991)
In re F.E.F., Juvenile. and
STATE of Vermont
v.
Edwin G. CAMERON.
Nos. 89-228, 89-296.
Supreme Court of Vermont.
May 17, 1991.
*899 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Alexandra N. Thayer, Asst. Atty. Gen., Waterbury, for plaintiff-appellant Department of Social and Rehabilitation Services.
William Wright, Bennington County State's Atty., Bennington, for plaintiff-appellant State.
Witten, Saltonstall & Woolmington, Bennington, for defendant-appellee F.E.F.
William M. McCarty and Bruce Hesselbach of McCarty Law Offices, Brattleboro, for defendant-appellee Cameron.
Before ALLEN, C.J., PECK, GIBSON and DOOLEY, JJ., and SPRINGER, District Judge (Ret.), Specially Assigned.
DOOLEY, Justice.
This is a consolidated appeal from district court orders in a criminal case and an unrelated juvenile delinquency case. Both orders require the Vermont Department of Social and Rehabilitation Services (SRS) to disclose records relating to child abuse investigations conducted in connection with the cases. In both cases, SRS has appealed the disclosure order. In the juvenile delinquency proceeding, SRS's failure to disclose the records led to dismissal of the case, and the State has appealed the dismissal through the state's attorney. We affirm the disclosure order in both cases, but reverse the dismissal of the juvenile proceedings.
In State v. Cameron, defendant is charged with sexual assault on a minor, his daughter, in violation of 13 V.S.A. § 3252(a)(3). The probable cause affidavit of a Bennington police officer indicates that defendant's wife and daughter originally made the complaint to an SRS worker who called the police officer. The alleged victim's statement was taken at the SRS office. The State disclosed the SRS worker as a trial witness, but did not turn over any of her records in discovery. Defendant sought her records from the state's attorney and eventually filed a motion for disclosure of all SRS records concerning the alleged sexual abuse.
Defendant made a number of claims in support of his asserted need for the records. He noted that the officer's statement indicated that he had interviewed the victim jointly with the SRS worker. He also stated that in cases of alleged child abuse by a parent, the protocol in effect in southern Vermont required an interview with the other parent, here the mother, and that he needed to see that interview because the mother had requested charges be dropped, apparently in return for a divorce property settlement. Defendant also claimed that the protocol required a medical examination of the alleged victim, but the State, in response to discovery requests, stated without explanation that no medical examination had been conducted. Finally, defendant alleged that there were inconsistencies in the victim's statements that were made available to him and that there was at least one more interview done by an SRS worker that was not made available to him.
Based on defendant's motion and a hearing, the court required SRS to turn over the records to the court pursuant to V.R.Cr.P. 16.2(f) so that the court could make an in camera inspection. SRS was given permission to appeal this order pursuant to V.R.A.P. 5.1 but was not granted a stay. The records were turned over to the court, and many were disclosed to defendant pending this appeal.
The history of the juvenile delinquency proceeding is similar. Defendant is *900 charged with a sexual assault on a nine-year-old boy in violation of 13 V.S.A. § 3252(a)(3). A state police officer's affidavit accompanying the petition indicates that a joint interview of the alleged victim was conducted with an SRS worker who acted as the "lead interviewer." At a preliminary hearing in March 1989, the court ordered the State to provide discovery of all "Rule 16 matters including SRS investigative files ... as to this matter." When the deputy state's attorney attempted to obtain the records from SRS, the department refused to provide them and communicated that refusal to the court along with an affidavit of the district director explaining its file-access policy and its relationship to the state's attorney's office. This led to a motion to compel and the issuance by defendant's counsel of a subpoena duces tecum to require the district director to bring the records to a hearing. At the hearing, the SRS director indicated that he had provided the state's attorney's office with two anatomically-correct drawings on which the alleged victim, during his interview with the officer and the SRS worker, marked the area where he had been sexually abused.
Following the hearing, the court reiterated its decision that the SRS file was discoverable under V.R.Cr.P. 16, but ordered that it be turned over to the court for an in camera inspection. SRS then filed a notice of appeal, and defendant responded with a motion to strike the notice because the discovery order was not a final judgment. The court struck the notice of appeal on April 25, 1989. When the State failed to comply with the discovery order on April 27th, the date of the merits hearing, the court dismissed the case concluding that the State had "flagrantly" violated the court's order to produce the SRS file. Both SRS and the State appealed from this order.
There are two main issues on the merits of these consolidated appeals: (1) whether the SRS files are discoverable under the applicable provisions of the Vermont Rules of Criminal Procedure;[1] and (2) whether all or part of the SRS files are discoverable as a matter of due process of law under the standards announced in Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). If we find the files discoverable under either theory, we must consider in the juvenile delinquency case whether dismissal was the proper sanction.

I.
Before we address the merits issues, however, we must consider appellees' position that the SRS appeals are not properly before us. In F.E.F., both SRS and the state's attorney appealed from the dismissal order. The State's appeal from the final judgment properly brought the case before us. See 4 V.S.A. § 2(a) (Supreme Court has jurisdiction over appeals from district court); 13 V.S.A. § 7403(b) (in felony criminal cases, State can appeal from dismissal of indictment or information). For this reason, we need not address whether the SRS appeal is proper.
In Cameron, the only appeal before us is one taken by SRS as a collateral order appeal. See V.R.A.P. 5.1. The collateral order doctrine creates a limited, discretionary exception to the normal final judgment rule. It "offers appellate redress in the small number of extraordinary cases where the normal appellate route will almost surely work injustice, irrespective of this Court's final decision." In re Maple Tree Place Associates, 151 Vt. 331, 333, 560 A.2d 382, 383 (1989). The order to be appealed must "`conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" State v. Lafayette, 148 Vt. 288, 291, 532 A.2d 560, 561 (1987) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).
*901 We have been very reluctant to allow interlocutory review of discovery orders, because such review would result in piecemeal appellate review rarely justified by judicial economy. See Ley v. Dall, 150 Vt. 383, 384-85, 553 A.2d 562, 563 (1988). We are also reluctant to find appellate jurisdiction at the request of a nonparty. We recognize that our reluctance must give way in an appropriate case in response to a claim of privilege. However, we must insist in such cases that the trial court has made a conclusive determination of the privilege issue.
In this case, there was no conclusive determination. The State complied with the discovery order without resistance.[2] We agree with the seventh circuit court of appeals that "a party's sincerity [is tested by] having to risk a [sanction] as a condition to appeal." Ryan v. Commissioner of Internal Revenue, 517 F.2d 13, 20 (7th Cir.1975). In the comparable situation where a nonparty seeks a collateral order appeal of the court's refusal to quash a subpoena against it, the federal courts have insisted that the matter ripen into a contempt proceeding so that there is nothing left for court action but the execution, and the nonparty has formally been brought into the proceeding. See, e.g., In re Grand Jury Subpoena for New York State Income Tax Records, 607 F.2d 566, 569 (2d Cir.1979). Here, as the proceedings in F.E.F. show, both SRS and the State could have gone further to bring the dispute to a head. Their failure to do so defeats collateral order jurisdiction.
Although we do not believe that Cameron is a proper case for collateral order jurisdiction, we do have some discretion to provide review. The situation here is comparable to that in State v. Saari, 152 Vt. 510, 513, 568 A.2d 344, 347 (1989), where we found no jurisdiction for a State appeal of an allegedly unlawful sentence but indicated review was available by extraordinary relief. Although the State failed to bring a proper extraordinary relief petition, we considered the case anyway, using V.R.A.P. 2 to suspend the requirements of V.R.A.P. 21, the extraordinary relief rule, "because of the importance of the issue and because no further facts are necessary in order to consider the merits." Id. at 514-15, 568 A.2d at 347. Similarly, in this case, SRS's mode of review, if any, lies in extraordinary relief. See Ley v. Dall, 150 Vt. at 386, 553 A.2d at 564. Since the identical issue is already before us in F.E.F. and no further factual development is necessary, we exercise our discretion under V.R.A.P. 2 to consider the SRS appeal in Cameron.

II.
In addressing the first merits issue, we start by emphasizing the narrowness of the discovery orders and requests in these cases. Neither of the orders requires disclosure of any material to appellees.[3] Instead, both require production of the records for in camera inspection by the district court. See V.R.Cr.P. 16.2(f). Thus, SRS may still argue that "specified disclosures be denied, restricted, or deferred," pursuant to Rule 16.2(d), as a result of the in camera review.
In Cameron, the request was for SRS records and reports "concerning the alleged sexual abuse" of the victim. In F.E.F., the order was to produce SRS investigation *902 files "as to this matter." Thus, we are dealing with documents that clearly come within the scope of discovery as defined in V.R.Cr.P. 16(a)(2)(C), (D) and (G). In fact, it does not appear that the State has argued that the requested documents are outside the normal scope of discovery for a criminal or juvenile delinquency case. Instead, the State has made two claims to resist discovery: (1) the documents are not possessed or controlled by the prosecutor so they cannot be provided in discovery; and (2) the documents are privileged.
The question of whether there is a sufficient nexus to the prosecutor for these materials is governed by V.R.Cr.P. 16(c). That subdivision states:
The prosecuting attorney's obligations under subdivisions (a) and (b) of this rule extend to material and information in the possession, custody, or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported, to his office.
The parties agree that the SRS files are not in the "possession, custody, or control" of the staff of the state's attorney. The trial court in each case decided, however, that the files were in the possession of persons who have participated in the investigation of the case and "who regularly report ... to his office." There is little dispute that the first prong of this test is met. In both cases, the initial interviews of the alleged victim were conducted by SRS workers along with the police. This is normal because the primary responsibility for investigating reported cases of child abuse or neglect in this state rests with the Commissioner of SRS. See 33 V.S.A. § 4915.
The applicability of subdivision (c) thus turns on the applicability of the reporting prong. The Reporter's Notes and drafting source shed some light on the meaning of this prong. The notes state that the rule covers material "possessed or controlled by others, such as police officers, involved in the investigation of the case under the prosecutor's direction." Reporter's Notes to V.R.Cr.P. 16(c). They amplify that the rule excludes "employees or officers of other governmental agencies who may be involved with the matter in question but have no working connection with the prosecution." Id. The language of the subdivision was taken from the American Bar Association Standards for Criminal Justice. See ABA Standards for Criminal Justice, Standard 11-2.1(d) (2d ed. 1978); see also Unif.R.Crim.P. 421(a), 10 U.L.A. 114-15 (1974). The commentary to the ABA standard indicates that the purpose is to charge the prosecutor with responsibility for "information known to people within the prosecutor's scope of authority while discharging the prosecutor from responsibility for ... information known to government employees `who have no connection with the prosecution and, for practical purposes, may be regarded as third parties.'" Id., commentary to Standard 11-2.1(d) (quoting ABA Discovery and Procedure Before Trial 78 (1970)).
It is clear from the context that the word "report" means to provide certain information. See O'Neill v. State, 675 P.2d 1288, 1292 (Alaska Ct.App.1984) (Singleton, J., concurring) (decided under Alaska Rule of Criminal Procedure 16(b)(4), which contains language virtually identical to V.R.Cr.P. 16(c)). The question then is whether SRS regularly reports particular information to the state's attorney. To answer this question, we must look at the role and responsibility of SRS in child abuse cases. As indicated above, SRS is the primary investigative agency when child abuse is reported. Even the police must report suspected child abuse and neglect to SRS. See 33 V.S.A. § 4913(a).
The nature of SRS action in confirmed cases of child abuse and neglect varies. In any case, it must assist the child and the child's family. 33 V.S.A. § 4915(c). Some cases go further to legal action. Many result in CHINS proceedings in juvenile court. These are filed by the state's attorney on request of SRS, certain other designated agencies, or persons who show that SRS failed to refer the matter after a specific period of time. See 33 V.S.A. *903 § 5517(a). Where SRS refers a case to the state's attorney for the filing of a CHINS petition, SRS must deliver to the state's attorney a report containing a record of the facts and circumstances of the case. See 33 V.S.A. § 5517(c).
Others cases lead to criminal prosecutions. Although the statutes have no specific provision on referral of cases to the state's attorney for criminal prosecution, the Commissioner may provide the contents of the SRS investigation file to the state's attorney, but may not provide it to another law enforcement agency. See 33 V.S.A. § 4916(d). This latter provision is an indication that the legislature intended SRS to be the primary reporting agency to the state's attorney in child abuse cases.
The working relationship between SRS and the state's attorney is such that the test of the second prong of Rule 16(c) is met. Even putting aside cases that are referred for criminal or juvenile delinquency prosecution, the relationship in CHINS cases requires regular reporting. In such cases, SRS provides the necessary information to bring the CHINS case and works under the direction of the state's attorney, who must present the case to the juvenile court. The records in these cases show, however, that this reporting also occurs in criminal and juvenile delinquency cases. In Cameron, the SRS worker is listed as a prosecution witness. In F.E.F., the SRS worker prepared an important exhibit during the interview of the alleged victim and provided it to the prosecutor. SRS workers are not third parties, unconnected to the presentation of these cases.
We recognize that there are considerations, as SRS argues, that cut against a disclosure obligation. The clearest indications of regular reporting are in noncriminal proceedings. Further, a disclosure obligation arising from SRS's investigatory responsibility may undercut its family assistance responsibility. While SRS workers may act under the direction of the prosecutor, they are not controlled by the prosecutor in the same way an employee would be controlled, and thus could refuse to provide the information to the prosecutor. We can only say that none of these circumstances avoid the application of the rule as drafted. The same control situation exists for the police, who are clearly covered by Rule 16(c). The rule contemplates that the areas of reporting and of information gathering may not be the same. See Balentine v. State, 707 P.2d 922, 929 n. 4 (Alaska Ct.App.1985) (Alaska rule extends to information obtained in crime stopper's program run by the police). SRS's additional social service obligation does not change its role as the primary investigative agency for child abuse. See Craig v. State, 76 Md.App. 250, 260, 544 A.2d 784, 789 (1988) (records of sexual assault center subject to disclosure under identically worded Maryland criminal rule because of special investigative role in child abuse cases), rev'd on other grounds, 316 Md. 551, 560 A.2d 1120 (1989).
The second ground raised to resist disclosure is that SRS files are covered by a statutory evidentiary privilege. SRS cites two statutes as providing a privilege to cover the information at issue here.[4] The first is the agency's general confidentiality provision prohibiting disclosure of "information pertaining to ... recipients of assistance or benefits" except for "purposes directly connected with the administration of the department or when required by law." 33 V.S.A. § 111(a) (made applicable to SRS by 33 V.S.A. § 306(a)). The second is the statute specifically applicable to child abuse and neglect investigations. See 33 V.S.A. § 4916(d). The statute provides:

*904 Written records maintained in the registry [of child abuse and neglect investigations] shall only be disclosed to the commissioner or person designated by the commissioner to receive such records, persons assigned by the commissioner to investigate reports, the person reported on, or a state's attorney. In no event shall records be made available for employment purposes, for credit purposes, or to a law enforcement agency other than the state's attorney. Any person who violates this subsection shall be fined not more than $500.00.
Subsection (e) of the latter statute requires verbal notice of a substantiated report of child abuse and neglect to the child's parent or guardian and allows for provision of the written record to the parent or guardian, or in certain cases, to the child's attorney. See 33 V.S.A. § 4916(e)(1), (2).[5]
For purposes of analysis, we will accept two propositions urged by SRS. The first is that in the absence of a constitutional obligation to disclose, privileged communications and information may not be discovered under Rule 16. Although the rule does not state this proposition directly, we agree that it is the logical interpretation of the rule. See State v. Roy, 151 Vt. 17, 32, 557 A.2d 884, 893 (1989); State v. Percy, 149 Vt. 623, 632, 548 A.2d 408, 413 (1988). The second is that the information sought in these cases is covered by the confidentiality statute for information in the registry of records of child abuse and neglect proceedings. Indeed, if the information is not covered by the statute, the case for nondisclosure is weaker.
Both of the statutes relied upon by SRS make information confidential. This does not mean, however, that they establish evidentiary privileges. See 23 C. Wright & K. Graham, Federal Practice and Procedure § 5437, at 892-93 (1980). Where we have recognized statutes as creating evidentiary privileges, the intent of the legislature to do so was far more clearly expressed. In Camp v. Howe, 132 Vt. 429, 432, 321 A.2d 71, 72-73 (1974), and Wheeler v. Central Vermont Medical Center, Inc., 155 Vt. 85, 89, 582 A.2d 165, 168 (1989), the statutes in question specifically stated that the information involved could not be admitted in evidence in a court proceeding. In State v. Roy, 151 Vt. at 32, 557 A.2d at 893, the statute at issue, 20 V.S.A. § 1923(a), did not expressly provide that it prevented the introduction of the information made confidential into evidence in a court proceeding. However, the disclosure exceptions were very narrow and clearly did not apply in the circumstances for which access was sought. We concluded that because it was clear "that the intent of the statute is that the records not be subject to disclosure except for the statutory purposes," a form of evidentiary privilege was created. State v. Roy, 151 Vt. at 32, 557 A.2d at 893.
Because evidentiary privileges directly undercut the truth-seeking function of court proceedings, we will not construe a confidentiality statute as creating an evidentiary privilege unless the intent to do so is clear. See C. Wright & K. Graham, supra, § 5347, at 893. We cannot find the requisite intent with respect to either of the statutes cited by SRS. The general confidentiality statute gives way when disclosure is provided by law, which covers mandated disclosure for use in a court proceeding. The confidentiality statute for the investigation of child abuse and neglect is riddled with exceptions and gives the Commissioner broad discretion to allow disclosure. Moreover, the statute allows for the information to reach the prosecutor for law enforcement use. It is likely that the legislature intended that the information in the registry would be used where appropriate in criminal and CHINS proceedings. We do not think an evidentiary privilege was intended.
*905 Because the material in issue in both cases is discoverable from the prosecution and is not protected by an evidentiary privilege, the orders to turn over the material for in camera inspection were proper. We do not have to reach appellees' additional claim that disclosure is required as a matter of due process of law. We do have to consider the sanction question in F.E.F.

III.
Rule 16.2(g) provides broad authority for the imposition of sanctions for failure to comply with a discovery rule or order. Under this sanction authority, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances." V.R.Cr.P. 16.2(g)(1). The court may impose sanctions on counsel for a willful violation of a discovery rule or order. V.R.Cr.P. 16.2(g)(2).
We agree that dismissal of the proceeding may be a necessary sanction in some cases. However, the sanction should not be harsher than necessary to accomplish the goals of the discovery rules. See United States v. Gee, 695 F.2d 1165, 1169 (9th Cir.1983). The use of a dismissal sanction is proper only if the court finds that the defendant would be prejudiced by anything less than dismissal. See State v. Sird, 148 Vt. 35, 39, 528 A.2d 1114, 1116 (1987) (reversal of conviction proper remedy for discovery violation only if prejudice is shown); cf. John v. Medical Center Hospital of Vt., Inc., 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978) (in civil case, dismissal sanction should be used only where there has been "bad faith or deliberate and willful disregard for the court's orders").
Although the discovery violation in this case was flagrant in the sense that SRS intentionally refused to comply with the order, its action appears to have been motivated by a desire to test the validity of the order. Even if SRS continues to resist compliance on remand, it does not follow that the proper sanction is dismissal. It may be that through other discovery the parties can determine the contents of the relevant SRS files and their significance to the defense, and fashion a remedy thereafter. Alternatively, since appellee issued a subpoena to SRS, enforcement of the subpoena may bring relief. It is entirely appropriate to make the State bear the cost of any additional discovery. Of course, if the court determines after further exploration that only dismissal will eliminate the prejudice to the defendant, it may order dismissal at that time.
The order in State v. Cameron, No. 89-296, is affirmed. The dismissal order in In re F.E.F., No. 89-228, is reversed and remanded for proceedings not inconsistent with this opinion.
PECK, J., dissents without opinion.
NOTES
[1] The Vermont Rules of Criminal Procedure apply in juvenile delinquency proceedings. See In re J.R., 147 Vt. 7, 10, 508 A.2d 719, 721 (1986).
[2] Appellee Edwin Cameron argues that, because the State complied, this appeal is moot. We note, however, that a claim of privilege is not defeated when disclosure is compelled erroneously. See V.R.E. 511. Since disclosure was made in response to a court order, we do not believe that the privilege claim has been waived.

We must also emphasize, however, that the consequences of disclosure supply the major reason for interlocutory review. The fact that disclosure has already occurred greatly undercuts SRS's argument that a collateral order appeal is appropriate.
[3] The order in Cameron to produce the documents for in camera inspection was followed by an order requiring disclosure of some of the contents of the SRS file to defendant. Although this disclosure order was covered by the notice of appeal, SRS has failed to provide it to us or make any specific claims about the documents it was required to disclose. Accordingly, we can review only the order to produce the documents for in camera inspection.
[4] SRS also claims that disclosure of the information in these cases will violate federal provisions requiring SRS to protect the confidentiality of information concerning persons assisted with federal funds. See 42 U.S.C. § 671(a)(8); 45 C.F.R. § 1340.14(i). There is no indication that these provisions require the state to establish evidentiary privileges. In any event, they do not directly create privileges in Vermont court proceedings. Cf. In re K.H., 154 Vt. 540, 541-43, 580 A.2d 48, 48-49 (1990) (family reunification requirement of 42 U.S.C. § 671(a)(15) does not require trial court, in ruling on petition for termination of parental rights, to make a finding on State's alleged noncompliance with the federal statute).
[5] Subsection (c) of § 4916 requires the Commissioner of SRS to adopt rules to permit use of the registry while preserving confidentiality of the records. The Commissioner has adopted regulations, but they provide no more detail than is set forth in the statute. See Vermont Dep't of Social and Rehabilitation Services, Social Services Policy Manual § 2018, 3 Code of Vermont Rules, Rule 13163002, at 22 (1982).