## State of Vermont v. Ellen S. Kiser
## State of Vermont v. Kevin Bradley

[610 A.2d 135]

Nos. 91-262 & 91-263

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 8, 1992

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*Jeremy Dworkin*, South Londonderry, for Defendant-Appellee Kiser.

*David J. Williams* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellee Bradley.

**Dooley, J.** The defendants in these consolidated cases are charged with possession of marijuana. Both cases were dismissed by the district court for failure of the State to comply with a discovery order. The State appeals the dismissals. We reverse and remand.

In August of 1990, a Vermont state police officer received a call from Detective Dave Dubret of the Fairfield, Connecticut police department. Detective Dubret indicated that a confidential informant had identified Kevin Bradley of South Londonderry, Vermont as a major marijuana trafficker who was growing marijuana in Vermont and distributing it in Connecticut. The Vermont officer determined that Kevin Bradley resided with Ellen Kiser, who had contacts with Connecticut.

On October 16, 1990, the Vermont officer again spoke with Detective Dubret, who informed him that Kevin Bradley had just been arrested in Connecticut "after delivering approximately 43 grams of marijuana to Leon Galemba." The Vermont officer used the above information to obtain a search warrant for the Kiser/Bradley house where police found thirteen pounds of marijuana. Most of the marijuana was in a room identified by Ellen Kiser as being used exclusively by Kevin Bradley. Both defendants were charged with felony possession of marijuana in violation of 18 V.S.A. § 4230(a)(4).

Almost immediately, the cases were dominated by a dispute over discovery in which defendants sought all information about Detective Dubret's investigation and the arrest of defendant Bradley in Connecticut. On December 17, 1990, the trial judge ordered the State to produce all written reports of Detective Dubret. On March 26, 1991, the court ordered the Attorney General, who was prosecuting the case, to produce four Connecticut police officers for depositions in Vermont. Defendants followed up with a request for the production of items such as notes, reports, and photographs in the possession of the Connecticut officers.

The State complied with the order to produce Detective Dubret's reports. The Connecticut officers initially refused to come to Vermont for a deposition but later agreed to come as long as certain restrictions were imposed on the scope of the inquiry. The court refused to accept the conditions, and further granted the motion to produce the items in the possession of the Connecticut officers, directing that they be produced at the depositions. Depositions began on May 1st but broke down when the officers failed to produce the requested items and were not willing to answer some of the questions.

Defendants then moved to dismiss as a sanction for the State's noncompliance with discovery orders. The court

granted the motions, ruling that the information to be obtained was relevant to a possible claim of governmental misconduct under *Franks v. Delaware*, 438 U.S. 154 (1978); that it was the State's duty to produce the witnesses and related evidence in their possession for deposition; that the discovery orders were violated; and that the only available sanction was dismissal of the cases. The court then dismissed the cases.

The State argues that (1) the court exceeded its authority in ordering the State to produce the Connecticut officers, along with the related evidentiary materials, for the deposition; and (2) the court abused its discretion in dismissing the cases as a sanction. Because we agree that the discovery orders went too far, we do not reach the sanction question.

In view of the structure of our discovery rules, it is necessary to separate the order to produce the Connecticut officers for deposition from the order to produce the items in the possession of the Connecticut officers. Depositions are governed by V.R.Cr.P. 15. The rule does not specify, however, how deponents are notified of the deposition and required to be present. That subject is covered in Rule 17(f), the subpoena rule, which provides that proof of service of notice of deposition on the other parties to the criminal case affords sufficient authorization for the clerk of the court to issue a subpoena for the deponent to appear at the deposition. V.R.Cr.P. 17(f)(1). Neither Rule 15, nor Rule 17, places any obligation on a party to produce a witness for a deposition. The party seeking the deposition has the burden of procuring the witness. The rule imposes no obligation on the State to produce a witness for discovery deposition by a defendant.[1]

In the trial court, defendants argued that the State's obligation to produce the Connecticut officers for the deposition could be derived from its disclosure obligations under Rule 16. That rule is limited, however, to the disclosure of names of witnesses and written or recorded statements of those witnesses and "material or information," to the extent the foregoing are

---

[1] One of the officers, Detective Dubret, is listed by the State as a potential witness for it at trial. We need not decide at this point what course of action the trial court might take if the State seeks to have Detective Dubret testify before defendants have the opportunity to depose him.

within the prosecuting attorney's possession, custody or control. V.R.Cr.P. 16(a)(1), (2). There is nothing in the wording of the rule that suggests that it imposes on the prosecuting attorney an obligation to produce a witness for a deposition. When we view the rules together, we must conclude that depositions are governed by Rule 15, and not by Rule 16.

Although only a few states authorize the use of depositions for discovery purposes in criminal cases, see Yetter, *Discovery Depositions in Florida Criminal Proceedings: Should They Survive?*, 16 Fla. St. U.L. Rev. 675, 675 n.1 (1988) (criminal defense discovery depositions are authorized in only five states: Florida, New Hampshire, North Dakota, Texas and Vermont), the courts of one of the states, Florida, have addressed the issue before us. Without exception, the Florida District Courts of Appeal have held that the prosecution has no obligation to produce a witness for a defense discovery deposition, even if the State has indicated that it will call the witness to testify in the trial. See, e.g., *Marshall v. State*, 413 So. 2d 872, 873 (Fla. Dist. Ct. App. 1982) (State is not "responsible to keep track of important witnesses so as to be able to produce them for the defendant's discovery"); *State v. Mesa*, 395 So. 2d 242, 243 (Fla. Dist. Ct. App. 1981) and cases cited therein (State is not ordinarily required "to produce prosecution, much less defense, witnesses for deposition or trial"). Some of these decisions involve the identical circumstance present here—that is, an attempt to order the State to produce an out-of-state prosecution witness for an in-state deposition. See, e.g., *State v. Ashley*, 393 So. 2d 1168, 1168 (Fla. Dist. Ct. App. 1981). The Florida rules are similar to ours, and the decisions in that state are persuasive authority for the interpretation we have reached.

The order to produce the related evidentiary materials involves different discovery rules. On April 26, 1991, defendants moved to compel the State to produce a number of items in the possession of the Fairfield, Connecticut police. Defendants sought items related to the police surveillance of the residence in Connecticut where defendant Bradley was arrested, the chain of custody of these items, the police interview with Leon Galemba, and wiretapping applications. The State's failure to produce these items was one of the grounds for dismissal.

Defendants' argument in support of the discovery order is that the items requested all come within the prosecutor's dis-

closure obligation under Rule 16(a) since they all relate to whether defendant Bradley transferred drugs to Leon Galemba in Connecticut. In defendants' view, this information was relevant to determine whether the search warrant affidavit was based on a false statement "knowingly and intentionally, or with reckless disregard for the truth, . . . included by the affiant." *Franks v. Delaware*, 438 U.S. at 155–56.

Defendants' argument that the Vermont prosecutor had the obligation to turn over information in the custody of the Fairfield, Connecticut police department is based on Rule 16(c). That provision extends the prosecutor's obligation to information in the custody of "others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported, to his office." V.R.Cr.P. 16(c). Defendants claim that the Connecticut police come within the provision because the Vermont officer's probable cause affidavit states that he "entered into a joint investigation with members of the Fairfield, CT. Police Department."[2]

We assume that the Connecticut police officers participated "in the investigation or evaluation of the case" although "the case" for purposes of those officers appears to be the alleged drug sale in Connecticut, rather than the possession in Vermont. The applicability of the disclosure requirement depends upon whether the Connecticut officers "reported" to the office of the prosecutor for purposes of this case.

In *In re F.E.F.*, 156 Vt. 503, 510, 594 A.2d 897, 902 (1991), we explored in detail the purpose of the reporting prong of Rule 16(c).[3] That discussion is instructive here:

> The Reporter's Notes and drafting source shed some light on the meaning of this prong. The notes state that the rule covers material "possessed or controlled by others, such as police officers, involved in the investigation of the case un-

---

[2] In addition, discovery material indicates that two Fairfield officers attended a meeting of the Southern Vermont Drug Task Force.

[3] *F.E.F.* involved the alternative reporting prong applicable to those who "regularly report" to the prosecutor. We see no difference between the intent behind that provision and the intent behind the requirement in question here that the persons have reported to the prosecutor with reference to the case before the court.

der the prosecutor's direction." Reporter's Notes to V.R.Cr.P. 16(c). They amplify that the rule excludes "employees or officers of other governmental agencies who may be involved with the matter in question but have no working connection with the prosecution." *Id.* The language of the subdivision was taken from the American Bar Association Standards for Criminal Justice. See ABA Standards for Criminal Justice, Standard 11–2.1(d) (2d ed. 1978); see also Unif. R. Crim. P. 421(a), 10 U.L.A. 114–15 (1974). The commentary to the ABA standard indicates that the purpose is to charge the prosecutor with responsibility for "information known to people within the prosecutor's scope of authority while discharging the prosecutor from responsibility for ... information known to government employees 'who have no connection with the prosecution and, for practical purposes, may be regarded as third parties.' " *Id.*, commentary to Standard 11–2.1(d) (quoting ABA *Discovery and Procedure Before Trial* 78 (1970)).

We interpreted the word "report" to mean "to provide certain information." *Id.* We concluded in *F.E.F.* that information in the possession of the Vermont Department of Social and Rehabilitation Services (SRS) had to be disclosed by the prosecutor because SRS is "the primary reporting agency to the state's attorney in child abuse cases." *Id.* at 511, 594 A.2d at 903.

Here, nothing suggests that the Connecticut officers reported any information to the prosecutor except voluntarily to meet discovery demands of defendants.[4] More importantly, the Connecticut officers *were not involved in the investigation of the case under the direction of the Vermont Attorney General.* The out-of-state officers were not within the scope of authority of the Vermont Attorney General. While we have construed the term "report" broadly to mean the provision of information, its

---

[4] Defendants argue that the fact that some Fairfield officers attended a meeting of the Southern Vermont Drug Task Force shows that they reported to the Attorney General's office, the prosecutor in this case, because the Attorney General is an ex officio member of the task force. We do not believe that information sharing with an investigatory task force, even when the prosecutor is nominally a member, can be deemed to be reporting to the prosecutor.

use in context requires some duty to provide the information.[5] The Connecticut officers have no duty to provide information to Vermont authorities.

There is nothing to suggest that the Attorney General did not act in good faith to obtain as much information as possible from the Fairfield police department. The requested information was not provided because it was unavailable to the prosecutor despite these efforts. We do not believe the prosecutor's obligation to disclose extends to unavailable information in the possession of an out-of-state law enforcement agency. See *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (information in possession of state authorities not available to federal prosecutor and need not be provided in discovery under Federal Rule 16(a); *State v. Dowling*, 453 A.2d 496, 499 (Me. 1982) (Virginia medical records not in control of Maine authorities and not subject to disclosure under Maine Criminal Rule 16, which is similar to Vermont's rule).

Because the State had no obligation to produce the Connecticut officers for depositions or to provide defendants information in the possession of the Connecticut officers, the dismissal of the informations was erroneous.

*Reversed and remanded.*

---

[5] The definition in *F.E.F.* was taken in part from a definition used by Judge Singleton of the Alaska Court of Appeals in his concurring opinion in *O'Neill v. State*, 675 P.2d 1288, 1292 (Alaska Ct. App. 1984). Judge Singleton's definition included that the information be created "in furtherance of the officer's law enforcement duties." *Id.* He viewed the rule as an application of the agency principle that knowledge of the agent is imputed to the principal if it concerns a matter about which the agent is obligated to give the principal information.