### State of Vermont v. Carl Handson

[689 A.2d 1081]

No. 94-634

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 13, 1996

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Donal F. Hartman, Jr.*, Assistant Attorney General, Waterbury, for Plaintiff-Appellee.

*Robert Appel*, Defender General, Montpelier, for Defendant-Appellant.

**Johnson, J.** With this decision we resolve the third case in a recent trilogy of appeals by the Office of the Defender General, all seeking relief from trial court orders to pay for certain services. See *State v. Batchelder*, 165 Vt. 326, 683 A.2d 1002 (1996); *State v. Lizotte*, No. 96-154 (Vt. July 26, 1996) (unpublished mem.). We address an issue left open by *State v. Wool*, 162 Vt. 342, 648 A.2d 655 (1994): given that indigent defendants who choose to represent themselves are entitled under the Public Defender Act, 13 V.S.A. § 5231(2),[1] "to

---

[1] In 1996, the Legislature amended 13 V.S.A. § 5231(2). 1995, No. 178 (Adj. Sess.), § 63. Under the new provision, "[a]ny such necessary services and facilities of representation that exceed $1,500.00 per item must receive prior approval from the court after a hearing involving the parties." *Id.* The relevant proceedings in this case took place before the amendment and are not affected by the change. Moreover, we see nothing in the new provision that affects our conclusion that the Defender General must pay for the necessary expenses of pro se indigent defendants. In future proceedings, however, under the terms of the statute, the court must give prior approval for any individual expense that exceeds $1,500.00, whether the indigent defendant is pro se or represented by a public defender.

public funding for . . . necessary expenses" related to their defense, *Wool*, 162 Vt. at 348-49, 648 A.2d at 660, what agency of the state must pay the bill? The Defender General argues that the Judiciary is financially responsible for such expenses. We agree with the trial court, however, that the costs are properly borne by the Defender General. We affirm the court's order in most respects, but conclude that, in this case, the bill for telephone calls made by defendant from Northwest State Correctional Facility (NSCF) should be paid by the Department of Corrections.

Defendant, who is not a party to this appeal, was charged with multiple counts of lewd and lascivious conduct with a child, see 13 V.S.A. § 2602, and multiple counts of sexual assault on a minor under sixteen years of age, see *id.* § 3252(b)(1). Pending trial, he was detained at NSCF. Although defendant was entitled to the services of a public defender, he chose to represent himself. In reliance on our decision in *Wool*, the trial court issued several orders relating to defendant's right to receive services necessary to the preparation of his defense. The Defender General sought and received permission to appeal the court's order that the Defender General pay for defendant's telephone calls related to the case, the costs of copying performed by the Department of Corrections, and laboratory analysis of a piece of physical evidence.[2] Defendant's case was ultimately resolved when he pled no contest to two counts of lewd and lascivious behavior with a child.

I.

At the outset, we recognize that payment of services for pro se indigent defendants raises serious fiscal concerns for the Defender General. In such cases, the court, not the Defender General, decides what expenses are necessary to allow the defendant to mount an adequate defense. See *Wool*, 162 Vt. at 349-50, 648 A.2d at 660. The Defender General complains that requiring his office to pay for these expenses while the Judiciary has "unfettered control" over the extent of services presents no incentive to control costs. He argues that financial responsibility for these expenses should be shouldered by the same agency that controls them — that is, the Judiciary.

---

[2] The court also required the Defender General to provide and pay for the services of an investigator. The Court Administrator, however, agreed to bear that expense to ensure that defendant was not denied the services of an investigator during the pendency of this appeal.

Although this cost control argument has some appeal in a time of increasing fiscal constraints, we are not persuaded that the Judiciary is better suited to pay for the litigation expenses of pro se indigent defendants. The Defender General ordinarily provides for the defense of indigent defendants; for example, had this defendant exercised his right to assigned counsel, the cost of representation and accompanying services, such as clerical support, investigative services, and laboratory tests, would have come out of the budget of the Defender General. We noted in *Wool* that reimbursing a defendant for necessary expenses "fosters sound fiscal and public policy, because a defendant would not be required to forego pro bono counsel or self-representation simply to obtain associated services at the public expense." *Id.* at 349, 648 A.2d at 660. By waiving the right to a public defender, defendant relieved the Defender General of a substantial financial obligation. The Defender General's claim that his budget is not sufficient to accommodate these costs is somewhat perplexing. Payment for the services that permit a defendant to exercise the right to appear pro se is not an extra expense imposed on the Defender General, but a substitute for the expense of representation by counsel.

The Defender General's concerns would be well-founded if, indeed, the courts had "unfettered" discretion to order reimbursement of expenses incurred by pro se defendants. That is simply not the case, however. Our decision in *Wool* placed a fairly sharp limit on the expenses that a court may authorize. To receive reimbursement, a defendant must show that a requested service is necessary to mount an adequate defense. *Id.* at 349-50, 648 A.2d at 660. Aside from expenses inherent to self-representation, such as telephone calls and postage, many services would be necessary whether a defendant is pro se or represented by counsel. For example, if a given case requires laboratory analysis or expert testimony, that need is the same whether the defendant is pro se or represented by a public defender. In either case the cost of the service is appropriately allocated from the budget of the Defender General.

In light of this standard of necessity, the argument that courts would have a greater incentive to control costs if the Judiciary paid for these expenses is logically flawed. Courts are not free to disallow expensive measures for solely budgetary purposes. The question is whether a defendant has demonstrated a need for a requested service, and that question should receive the same answer regardless

of who pays for the service. Nor, practically speaking, is there any reason to believe that shifting financial responsibility to the Judiciary would encourage trial courts to exercise greater financial restraint in these decisions. Trial judges bear no more responsibility for the Judiciary's budget than they do for the Defender General's budget.

The Defender General also suggests that the trial court is placed in an untenable position in these cases, because determining whether a requested service is necessary may require probing defense strategy to an unreasonable extent. Although this is obviously a delicate undertaking, we have no reason to believe that trial courts are unable to make such determinations. At any rate, the Defender General does not explain why this difficulty would be alleviated if payment for the services was borne by the Judiciary.

Anyone who has ever been responsible for a budget, whether for a family, a business, or a large state agency, can understand the frustration of bearing financial responsibility for expenses that someone else controls. Nonetheless, we cannot see that this system poses an unmanageable problem for the Defender General. Indeed, the primary expense of that office — the number of needy defendants requiring representation — is entirely out of the control of the Defender General. And even in cases where the defendant is represented by a public defender, the court may order the Defender General to pay for a necessary service. In short, the mere fact that the Defender General cannot control the cost of providing services to pro se indigent defendants does not mean that those costs should instead be borne by the Judiciary.

## II.

The Defender General also challenges the trial court's decision that two specific expenses incurred by defendant, namely, telephone calls placed by defendant from NSCF, and laboratory analysis of three containers of petroleum jelly, were necessary to his defense and should be paid for by the Office of the Defender General. The telephone calls and the laboratory analysis raise quite different questions, so we address each issue separately.

Prior to the court's order, defendant's access to the telephone at NSCF was limited due to his lack of funds. The system established by the Department of Corrections placed a $1.75 surcharge on every call. Inmates who did not have enough money in their accounts to cover the surcharge were not able to make calls. The court recognized that defendant needed some telephone access to prepare his defense, and

granted him "reasonable access to a telephone . . . to be financed by the Office of the Defender General." The Defender General does not dispute the court's conclusion that defendant was entitled to some use of the telephone, and in fact encouraged the trial court to expand defendant's right to use the telephone to include the right to contact witnesses directly. The Defender General objects, however, to paying the surcharge imposed by the Department of Corrections.

The court made no finding as to the reasonableness of the surcharge, although it did note that the charge seemed "exorbitant." The court heard some argument on the issue, but did not hold an evidentiary hearing, and finally advised the Department of Corrections and the Defender General to resolve the problem themselves. The telephone bill sent to the Defender General by the Department of Corrections apparently included the surcharges. The Department of Corrections filed a brief with this Court defending the reasonableness of the surcharge.[3] At oral argument, however, counsel for the Department admitted that the entire telephone system, including the surcharge, has been scrapped.

█ Under the circumstances of this case, we agree with the Defender General that the cost of the telephone calls from NSCF should be borne by the Department of Corrections. As the Defender General points out, the charges are far higher than those incurred by other state agencies, including his office and the Attorney General's office. Indeed, requiring the Defender General to pay these charges may violate the statutory mandate that those representing indigent defendants be able "to use any state technical services and facilities . . . that are available to the prosecutor." 13 V.S.A. § 5277. Moreover, counsel for the Department admitted, both at oral argument before this Court and before the trial court, that the telephones available to the staff at NSCF are not subject to the surcharge. The surcharge may have been a reasonable part of the inmate telephone system. The discontinuation of the surcharge suggests otherwise, but that question, which was briefed by the Department, is not the one before the

---

[3] The Defender General has moved to strike the Department's brief and the accompanying supplemental printed case on the ground that the Department references documents not part of the record below. Given the unusual procedural posture of this case, and the fact that much of the record below consists of unsworn representations in court, the irregularities in the Department's brief and printed case are not of great concern. As we resolve this issue in favor of the Defender General without relying on the extra documents provided by the Department, the motion to strike is denied as moot.

Court. The issue is whether the Department could impose the surcharge on the Defender General in this case. Its decision to do so makes little sense, especially when other telephones were available, and both the court and the Defender General had expressed concern about the expense. As the telephone system has been changed, and all parties have learned from this experience, we do not expect that the problem will arise again.

■■ Defendant also requested laboratory analysis of containers of petroleum jelly offered by the State to corroborate the victim's statement that defendant often used petroleum jelly to facilitate penetration. Defendant claimed that he used the petroleum jelly on his paint brushes, to keep the bristles soft, and that analysis of the petroleum jelly would reveal the presence of paint thinner. According to defendant, the paint thinner in the petroleum jelly would have caused burning and inflammation if applied to the skin. The Defender General is correct that such evidence would not have conclusively established defendant's innocence. The trial court must be afforded some latitude, however, in determining whether a pro se defendant needs a requested service. Its decision will not be disturbed absent a showing that the court abused its discretion, or failed to exercise it. See *Hough v. State*, 560 N.E.2d 511, 517 (Ind. 1990) (reviewing trial court's denial of indigent defendant's request for abuse of discretion). Here, the court did not abuse its discretion in concluding that defendant demonstrated that an adequate defense could not be mounted without the evidence. As we required in *Wool*, defendant did "demonstrate specifically the purpose and nature," *Wool*, 162 Vt. at 350, 648 A.2d at 660, of the service he sought; if consistent with his claim, the laboratory analysis would have undermined the State's corroborating evidence. Although the court could have taken a more thorough look at whether the tests were "necessary services," 13 V.S.A. § 5231(2), its failure to do so was not an abuse of discretion.

■ The Defender General complains that the laboratory analysis requested by defendant would not have been approved by a representative of his office. The trial court could not be guided by that fact alone, as the court, not the Defender General, must decide whether a requested service is necessary. Nonetheless, this assertion does raise questions of equity and fairness. Pro se indigent defendants should not be denied necessary services merely because they refused the assistance of a public defender. At the same time, however, they are not entitled to greater assistance than defendants who are repre-

sented by counsel. The Defender General is in the best position to advise the court as to what services are typically provided to indigent defendants who accept assigned counsel. Here, the court appropriately included the Defender General in the proceedings to determine what services defendant would receive. Courts facing this issue in the future would also benefit from hearing the Defender General's opinion, as the court will be better able to put a defendant's request for services in context.

We are not, with this decision, giving the trial courts a "blank check" to authorize services for pro se defendants that will be paid for by the Defender General. The budget of that office is not unlimited; funds that must be expended on behalf of pro se defendants will not be available to those defendants who are represented by counsel. The courts cannot simply err on the side of ordering reimbursement without giving serious consideration to whether requested services are truly "necessary." We are confident, however, that the courts will recognize the need for restraint in this area, and will carefully scrutinize requests for services made by pro se defendants.

*That portion of the trial court's order requiring the Office of the Defender General to pay for defendant's telephone calls from Northwest State Correctional facility is vacated; in all other respects, the order is affirmed.*

**Morse, J.,** concurring. I concur in the judgment, but write separately to suggest another approach to the vexing problem posed by criminal defendants who represent themselves. This approach might have avoided the fiasco that resulted from defendant's self-directed defense in this case.

The facts of this dispute are a case study of inefficiency occasioned by institutional self-interest. The procedural history reveals the extent to which a single criminal case may consume inordinate resources. Defendant elected to proceed pro se and obtained a court order, pursuant to *State v. Wool*, 162 Vt. 342, 648 A.2d 655 (1994), compelling the Department of Corrections to provide him certain defense services. Predictably, the trouble then started.

Within two months, the Department filed a motion for relief from the order. About the same time, defendant requested additional services, including expert analysis of certain containers of petroleum jelly, additional use of a telephone, and a laundry list of other material resources to aid his defense. The trial court solicited the Defender General to evaluate defendant's requests and scheduled a hearing.

Counsel for the Department, an assistant attorney general representing the prosecution, the Defender General, defendant, and defendant's standby counsel — who had been appointed to assist defendant if he so requested — attended the hearing. The court ruled that defendant was to be afforded reasonable access to telephone service as well as the service of an expert to analyze the petroleum jelly, to be paid for by the Defender General. The court also resolved disputes over investigator's services, pens and stationery, postage, copying, law books, and recording devices. Finally, the court ordered that all further disputes over services were to be referred for mediation to an attorney from the Prisoners' Rights Unit of the Defender General's Office, admonishing all concerned that "it will not hear any dispute until the parties have made all diligent efforts to resolve the conflict." Neither reason nor good fortune prevailed, and the court's admonition was promptly and utterly ignored.

Within days, the Defender General filed a "Motion for Protective Order" objecting to the court's ruling that it pay for ancillary services to pro se defendants and arguing that it should not be required to "subsidize" the Department's "exorbitant" telephone surcharge. The Department filed a "Motion In Opposition." Following a hearing (again attended by defendant acting as his own counsel and four lawyers), the court denied the motion for relief. The court issued two subsequent orders modifying its original ruling. These orders formed the basis in part of the Defender General's appeal.

Two useful points emerge from the narrative of this torturous litigation. First, the Defender General's appeal is not recognized by any defined rule of appellate procedure. The Defender General is not a party to the underlying litigation and is not entitled to pursue an appeal under V.R.A.P. 5 or 5.1. Nor does the matter otherwise fit as a collateral final order appeal. *In re F.E.F.*, 156 Vt. 503, 508, 594 A.2d 897, 901 (1991). As the Court indicated in its entry order accepting review, we did so notwithstanding these defects under the rules permitting suspension of the normal requirements governing original actions for extraordinary relief. V.R.A.P. 2, 21; *F.E.F.*, 156 Vt. at 508-09, 594 A.2d at 901. We ordinarily decline such jurisdiction in all but the most important cases. *State v. Saari*, 152 Vt. 510, 514-15, 568 A.2d 344, 347 (1989).

Having now resolved the question of *who* pays for services to indigent pro se defendants, the Court — it is safe to say — will not soon revisit the question of *what* services should be provided to particular defendants in specific cases. I doubt the Court intends to

create a new category of litigation ancillary to every criminal case involving a pro se defendant. Questions or disputes concerning the provision of services to pro se defendants should be addressed and resolved, in the first instance, through the cooperative efforts of the defendant and a designated public defender or assigned counsel (see the discussion below), and subsequently approved by the court. *Wool*, 162 Vt. at 349, 648 A.2d at 660; 13 V.S.A. § 5231(2). Rarely should these matters require court intervention. Rarer still should institutional disputes among state agencies over the payment of services to pro se defendants require judicial resolution. In this regard, I share the Court's hope, if not its optimism, that "all parties have learned from this experience." 166 Vt. at 92, 689 A.2d at 1085.

The second, and more important, point relates to the means of dealing with legal services for pro se defendants in the future. Ostensibly to forestall conflicts of this nature, the Court virtually invites trial courts to consult the Defender General whenever ordering services for pro se defendants. Such a practice may alleviate conflict or, more likely, may simply enhance the opportunity to litigate every petty issue. I recommend, instead, that when faced with this situation, trial courts designate a local public defender or assigned counsel to serve as counsel to the defendant particularly for the purpose of providing ancillary services.

Indeed, this case offers a classic and vivid illustration of the potential pitfalls of uncontrolled self-representation. At his arraignment in February 1993, defendant was assigned a public defender to represent him. Several months later, defendant expressed dissatisfaction with his lawyer and moved to proceed without him. After carefully reviewing with defendant the rules of evidence and procedure and the status of the case, the court accepted defendant's waiver of his right to counsel and allowed him to proceed pro se. Defendant's competency was later questioned and the court assigned new counsel to represent him. In January 1994, the court determined defendant to be competent. His second attorney was then allowed to withdraw but agreed to remain as standby counsel. Defendant then became dissatisfied with this attorney, and upon defendant's request, the court discharged him. In late June, the court assigned a third attorney to serve as standby counsel.

Defendant subsequently became dissatisfied with that attorney and moved, in September 1994, to have him relieved. The request was denied. The following month, defendant became upset when counsel attempted to supplement defendant's cross-examination of a witness

during a suppression hearing and, as a result, sued the attorney in superior court for violation of his civil rights and infliction of emotional distress. That attorney then moved to be relieved as advisory counsel, citing a conflict of interest. Following a hearing in December 1994, the court denied the motion, noting that the complaint was frivolous, that defendant had filed similar complaints against other attorneys in unrelated matters, that a replacement would be extremely difficult to obtain, and that inordinate time (almost two years since the arraignment) had already expired.

In the meantime, as the court noted, defendant had been busily inundating the court with dozens of motions (over sixty by this time), including various requests for additional support services. For assistance in evaluating these requests, the trial court contacted the Defender General, who subsequently became actively involved in litigating issues relating to cost and financial responsibility, in addition to need. This contributed in part to the protracted proceedings.

Defendant's requests eventually resulted in a court order outlining in detail the various material aids that defendant was to be provided, including postage, investigative services, telephone access, pens, paper, stationery, and the like. Several months later, the Department filed a motion for relief asserting that defendant had abused the services provided, mailing multiple copies of documents to unrelated parties including the Governor and the Chief Justice, and filing eight lawsuits in the superior court against the Department for alleged violations of the court's order, as well as an action in federal court alleging the Department had violated his civil rights. Defendant responded to the motion by claiming that the Department had intentionally frustrated his efforts to prepare a defense and requested yet more materials and services, including unlimited telephone access, unlimited postage and copying service, and more paper (unlined in addition to lined). Following a hearing, the court confined defendant's access to services and materials directly necessary to his defense, and allocated certain costs for services among the Department and the Defender General. As noted, the Defender General subsequently filed a motion for "protective order" challenging the court's allocation of costs, and defendant moved to amend certain portions of the original order. These motions resulted in still further hearings and court orders, the last of which ended with the court "urg[ing] defendant to consult with advisory counsel in fulfilling these requirements."

The events that transpired here call to mind the image of a loose cannon on the deck of a wayward ship in heavy seas. The myriad

motions filed by defendant for more and more materials and services, the continual bickering among state agencies over costs, and the endless round of court hearings portray a defendant out of control, and a system unable to assert control. It need not have been this way.

The Supreme Court has held that the Sixth Amendment guarantees not only the right to counsel, but the right to dispense with counsel and conduct one's own defense. *Faretta v. California*, 422 U.S. 806, 821 (1975). This right is not unqualified, however. *Faretta* itself recognized that pro se defendants may seek to deliberately disrupt their trials or may simply require professional assistance. *Id.* at 834-35 n.46. Accordingly, the Court held that a state may — even over objection by the accused — appoint a standby counsel to aid the defense or to represent the defendant should termination of the self-representation become necessary. *Id.* at 835 n.46.

The Supreme Court examined the role of standby counsel in more detail in *McKaskle v. Wiggins*, 465 U.S. 168 (1984). There the Court reiterated that *Faretta* does not absolutely bar the participation of standby counsel but requires only that the defendant retain "actual control over the case he chooses to present to the jury" and that the jury "perce[ive] . . . the defendant is representing himself." *Id.* at 178. "[T]he primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177.

Thus, *Faretta* rights are not violated when standby counsel — even over the defendant's objection — handles "routine procedural or evidentiary" matters or seeks to ensure the defendant's "compliance with basic rules of courtroom protocol and procedure." *Id.* at 183. "In neither case is there any significant interference with the defendant's actual control over the presentation of his defense." *Id.* This is particularly true when counsel's "participation is outside the presence of the jury." *Id.* at 188.

Assessed in the light of these standards, I perceive no constitutional impediment to the appointment of standby counsel to evaluate a pro se defendant's need for ancillary services and attempt to provide them. Such assistance clearly falls in the category of "routine procedural or evidentiary" matters. *Id.* at 183. Moreover, counsel's limited participation in this area necessarily occurs outside the presence of the jury, impinges in no substantial way upon defendants' fundamental right to present their own defense in their own way before the jury, and avoids the waste of time occasioned by litigating ancillary service issues before the court. The role of standby counsel envisioned here would be to evaluate the reasonableness of the need

for services and make arrangment for their use. In that respect, their role would be no different than in a case where counsel fully represents the defendant.

While it impinges upon no constitutionally-protected rights, the assistance of advisory counsel in this discrete area would measurably protect the interests of defendants and maintain the integrity of the trial process. In this case, had advisory counsel borne the responsibility for providing ancillary litigation services, substantial savings in time and resources surely would have been achieved.