NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 67A

No. 2017-270

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Liana M. Roy | November Term, 2017 |

William D. Cohen, J.

Alexander Burke, Bennington County Deputy State's Attorney, Bennington, for
  Plaintiff-Appellant.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellee.

Thomas J. Donovan, Jr., Attorney General, and John D.G. Waszak, Assistant Attorney General,
  Montpelier, for Amicus Curiae Vermont Attorney General.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for
  Amicus Curiae Office of the Vermont Defender General.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Davenport, Supr. J. (Ret.),
         Specially Assigned


¶ 1. **ROBINSON, J.** In this amended opinion, we consider whether the State had a statutory right to appeal from the trial court's post-guilty-verdict judgment of acquittal, and, if not, whether this Court should use its authority pursuant to Vermont Rule of Appellate Procedure 21 to grant the State the extraordinary remedy of reversing the trial court's ruling and reinstating the guilty verdict. We conclude that the State did not have a statutory right to appeal in this case, and decline to exercise our authority to grant extraordinary relief. We withdraw our opinion of July 6,

2018, and replace it with this opinion dismissing the appeal and denying the State's petition for extraordinary relief.

¶ 2. The relevant background is as follows. Defendant Liana Roy was charged with custodial interference for taking her four-year-old daughter, who was then in custody of the Department for Children and Families (DCF), on a two-day trip out of the state without DCF's permission. After the State rested its evidence at trial, defendant moved for a judgment of acquittal, V.R.Cr.P. 29, arguing that the evidence failed to demonstrate that she interfered with DCF's custody to the degree necessary for 13 V.S.A. § 2451 to apply. At most, defendant argued, this was just "a visit gone bad." The court denied this motion, holding that the State had established the essential elements of its case. After defendant presented her evidence and the State called a rebuttal witness, the State rested and defendant renewed her motion for a judgment of acquittal. The court again denied the motion.

¶ 3. The court instructed the jury that the elements of custodial interference include: (1) defendant, (2) intentionally, (3) took a relative under the age of eighteen, (4) in a manner that unlawfully deprived the custodian of custody. Regarding the fourth element, the court instructed the jury that a person acts unlawfully if the person violates a specific court order, and that depriving a legal custodian of custody means more than preventing the legal custodian from exercising physical control over the child. In considering whether there was a deprivation, the jury could consider the amount of time the child was with defendant, or whether defendant attempted to hide the child from the legal custodian.

¶ 4. The jury convicted. Defendant subsequently moved to set aside the verdict, V.R.Cr.P. 29(c), or for a new trial, V.R.Cr.P. 33, arguing that nothing in the custody order specifically put defendant on notice that she was acting in violation of the authority of the legal

2

custodian, so the State had failed to demonstrate the requisite intent to deprive or interfere with DCF's custody.

¶ 5. The trial court agreed and issued a written decision in July 2017 granting defendant's motion for a judgment of acquittal. The court noted that "the jury's verdict was reasonable" based on the instructions given during the trial. But the court explained that it had erred in not instructing the jury that, to prove custodial interference when DCF is the custodian, the State must produce evidence of "a court order . . . detail[ing] the parent-child contact parameters." The detailed order provides the parent with notice of "when and where they are allowed to have contact with their children." This "bright-line rule," the court explained, separates mere "non-criminal interference with a custodian's wishes" from an "unlawful deprivation of custody" and tracks § 2451's original purpose—limiting parent-on-child kidnapping as a means to circumvent custody arrangements. The court found it dubious that the Legislature "intended to impose felonious liability . . . based only on the word of the assigned social worker, even when there is a court order granting DCF custody." Because the State failed to produce this type of court order during the trial, the court granted defendant's motion for a judgment of acquittal.

¶ 6. The State appealed, and without objection from any party, this Court entertained briefing, held oral argument, and issued a decision rejecting the trial court's determination that in the context of a charge of custodial interference against a parent when a child is in DCF custody, the State must produce a court order detailing the parameters of the parent's visitation. Our decision reversed the trial court's grant of a judgment of acquittal and remanded for the trial court to enter a judgment of conviction and to sentence defendant.

¶ 7. Ten days later, before the mandate had issued, this Court, on its own initiative, issued an entry order that noted, "Questions have arisen as to whether, pursuant to 13 V.S.A. § 7403, the State may appeal a judgment of acquittal pursuant to Vermont Rule of Criminal

3

Procedure 29. This question impacts the Court's jurisdiction to entertain the State's appeal and issue a decision in this case." We accordingly stayed the mandate and requested briefing on the question from the parties. We also invited the Attorney General and the Defender General to submit amicus briefing on the issue.

¶ 8. The State, both through the Bennington State's Attorney and through the Attorney General, emphasizes that review of a post-guilty-verdict judgment of acquittal does not violate defendant's protections against double jeopardy. They argue that the State's appeal of the trial court's judgment of acquittal is essentially an appeal of an order dismissing an indictment or information as to one or more counts—an appeal that is expressly permitted by statute. Alternatively, they ask this Court to treat the State's appeal as a timely petition for extraordinary relief pursuant to Rule 21 and to grant relief accordingly.

¶ 9. Defendant and the Defender General argue that the governing statute does not give the State a right to appeal the trial court's grant of a judgment of acquittal, and absent express statutory authority the State has no right to appeal. They argue that extraordinary relief is inappropriate because the State did not timely request extraordinary relief with the necessary support, and because the Legislature could have given the State the right to appeal in this scenario, but did not.

¶ 10. For the reasons set forth below, we conclude that the State did not have a common-law or statutory right to appeal, and decline to exercise our discretion to grant extraordinary relief.

I. Common-Law or Statutory Right to Appeal

¶ 11. The State has no common-law right to appeal in this case, and the plain language and history of 13 V.S.A. § 7403 defeat the State's argument that it has a statutory right of appeal. The fact that allowing an appeal in this setting would not violate defendant's double-jeopardy rights does not change our analysis.

4

¶ 12. In the United States, the government has not at common law had a right to appeal in criminal cases. See United States v. Sanges, 144 U.S. 310, 312 (1892) ("[I]t is settled by an overwhelming weight of American authority that the state has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."). Any claimed right to appeal by the State must thus be grounded in a statutory grant of such a right.

¶ 13. Vermont's statutes provide no such right. The only relevant statute, 13 V.S.A. § 7403, provides in relevant part as follows:

> (b) In a prosecution for a felony, the State shall be allowed to appeal to the Supreme Court any decision, judgment, or order dismissing an indictment or information as to one or more counts.
>
> (c) In a prosecution for a felony, the State shall be allowed to appeal to the Supreme Court from a decision or order:
>
> > (1) granting a motion to suppress evidence;
> >
> > (2) granting a motion to have confessions declared inadmissible; or
> >
> > (3) granting or refusing to grant other relief where the effect is to impede seriously, although not to foreclose completely, continuation of the prosecution.

13 V.S.A. § 7403.

¶ 14. The plain language of 13 V.S.A. § 7403 does not support the State's claims. Our goal in interpreting statutes is to implement the intent of the Legislature, and we first look to the plain and ordinary meaning of the statutory language to divine that intent. State v. Wainwright, 2013 VT 120, ¶ 6, 195 Vt. 370, 88 A.3d 423. The statutory list of orders appealable by the State does not include judgments of acquittal, whether pre- or post-verdict. The plain language here is

5

not unclear or ambiguous. It does not provide a mechanism for the State to appeal a judgment of acquittal.

¶ 15. We reject the State's argument that the trial court's order here amounted to a dismissal of the State's information pursuant to Rule 29 and is thus an appeal of an "order dismissing an . . . information" that is appealable by the State pursuant to 13 V.S.A. § 7403(b). To accept this argument, we would have to believe that the drafters of § 7403 did not understand the distinction between an order dismissing an information and an order entering judgment of acquittal for the defendant.[1] We generally "presume that the [L]egislature chose its words advisedly." Robes v. Town of Hartford, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993). Had the Legislature intended to include grants of judgments of acquittal, or even just post-guilty-verdict grants of judgments of acquittal, among the orders appealable by the State, it could have done so. It did not.

¶ 16. The historical evolution of § 7403 further reinforces this conclusion. Prior to 1982, § 7403 provided:

> Questions of law decided against the state . . . arising in a prosecution . . . for a crime or misdemeanor, shall, upon exceptions by the state, be allowed and placed upon the record before final judgment.
>
> When such exceptions are so taken and allowed . . . such court may, in its discretion pass the same and such cause or proceeding to the supreme court before final judgment, and the supreme court shall hear and determine the question upon such exceptions and render final judgment thereon, or remand the same . . . for further trial or other proceedings . . . .

---

[1] Black's Law Dictionary defines "dismissal" as "[t]ermination of an action or claim without further hearing, esp. before the trial of the issues involved," and defines a motion for judgment of acquittal as "[a] criminal defendant's request, at the close of the government's case or at the close of all evidence, to be acquitted because there is no legally sufficient evidentiary basis on which a reasonable jury could return a guilty verdict." Black's Law Dictionary (10th ed. 2014) (emphases added). A dismissal does not necessarily resolve a case on the merits and may or may not preclude the State from refiling charges. See V.R.Cr.P. 48(b)(2) (providing that unless court directs that dismissal is with prejudice, dismissal is without prejudice). A judgment of acquittal is a final judgment on the merits. See Evans v. Michigan, 568 U.S. 313, 318-19 (2013) (noting finality of acquittal).

6

1912, No. 96, §§ 1-2. Pursuant to this version of the statute, this Court allowed an appeal of a judgment of acquittal entered after a guilty verdict. State v. Mills, 133 Vt. 15, 19, 328 A.2d 410, 413 (1974) (reversing judgment of acquittal entered after guilty verdict). The statute contemplated the possibility of an interlocutory appeal by the State for virtually any question of law, but the appeal was not a matter of right; rather, whether to allow the appeal fell within the discretion of the trial court in the first instance, and this Court on appeal. See V.R.A.P. 5(b) (amended 1982). The 1982 statutory amendment created a nondiscretionary right of appeal for the State in the specifically defined circumstances set forth above. See 1981, No. 223 (Adj. Sess.), § 13. But it eliminated any provision for the State to appeal, as a matter of right or judicial discretion, in all other cases. Id. The Legislature passed this amendment several years after the Mills case, in which this Court, applying the prior statute, allowed the State to appeal a judgment of acquittal entered after a guilty verdict. The Legislature's choice to omit any reference to judgments of acquittal in its list of orders appealable by the State, especially given relatively recent case law allowing the State to appeal a post-guilty-verdict judgment of acquittal, reinforces our conclusion that the Legislature did not intend to allow the State to appeal post-guilty-verdict judgments of acquittal.

¶ 17.    The State's argument that allowing an appeal in this context would not violate defendant's double-jeopardy rights misses the point. Although one purpose of the statute limiting the State's opportunities to appeal in criminal cases may be to prevent erosion of protections against double jeopardy, § 4703 does not purport to track state or federal constitutional protections, and operates as an independent ground. United States v. Scott, 437 U.S. 82, 85 (1978) (noting that before Congress passed statute defining government's right to appeal in criminal cases with express reference to Double Jeopardy Clause, statutory restrictions on government appeals were independent of protections of Double Jeopardy Clause). Vermont statute does not authorize the

7

State to appeal a judgment of acquittal entered by the court following a jury verdict of guilty, regardless of whether such an appeal would violate a defendant's double-jeopardy rights.

## II. Extraordinary Remedy

¶ 18.    Pursuant to the Vermont Rules of Appellate Procedure, this Court may grant extraordinary relief "where there is no adequate remedy under [the] rules or by appeal, or through proceedings for extraordinary relief in the superior court." V.R.A.P. 21(a)(2). The rule abolishes the extraordinary writs of certiorari, mandamus, prohibition, and quo warranto, and provides that relief that would have been available pursuant to those writs is only available as provided in Rule 21. V.R.A.P. 21(b). Parties may commence an action for extraordinary relief by presenting a complaint to the Court, or through proceedings for extraordinary relief in the superior court. V.R.A.P. 21(a)(2).

¶ 19.    We decline to exercise our discretion to grant the State extraordinary relief pursuant to Rule 21. Vermont precedent, as well as persuasive authority from other states, supports the conclusion that, especially given the statutory limits on the State's right to appeal, we should be exceptionally cautious in exercising our authority to grant extraordinary relief to correct legal errors by the trial court that are not otherwise appealable. For several reasons, this case does not fall within the narrow category of cases in which we can and should exercise our authority to grant extraordinary relief where there is no adequate remedy by appeal.

¶ 20.    Our own case law supports the proposition that we should be especially loath to grant the State the functional equivalent of an appeal where the Legislature has not conferred a right to appeal by statute. In the case of State v. Benjamin, we considered an appeal by the State of a trial court decision dismissing an information against the defendant. 124 Vt. 20, 196 A.2d 507 (1963). We stated, "The jurisdiction of the Supreme Court to hear and determine exceptions reserved by the State is restricted to appeals expressly authorized by statute." Id. at 20-21, 196

8

A.2d at 508. Because the applicable statute then governing the State's right to appeal in criminal cases required a discretionary ruling by the trial court passing the case to this Court before final judgment, and defendant had not followed this process, this Court concluded that it had no jurisdiction to entertain the State's claims of error. In asserting the above bright-line rule, this Court did not consider the possibility of extraordinary relief pursuant to a common-law writ.

¶ 21.    When this Court did consider that possibility in State v. Saari, it established strict limitations on the court's proper use of the power of extraordinary relief in the absence of a statutory direct right of appeal. 152 Vt. 510, 568 A.2d 344 (1989). Saari addressed consolidated appeals in two cases in which the trial court, having adjudicated defendants guilty pursuant to their guilty pleas, imposed sentences below the statutory minimums for the respective charges. The trial court concluded that statutory minimums violated the proportionality clause of the Vermont Constitution and defeated the defendants' rights to allocution. The State sought to appeal the trial court's denial of its motions to reconsider the respective sentences. Before considering the merits, this Court considered the jurisdictional question. Because the sentences at issue were for misdemeanor charges, we concluded that the State had no statutory right to appeal the sentences. Id. at 513, 568 A.2d at 346. Noting that the State's appeal did not implicate double-jeopardy concerns, we concluded that extraordinary relief pursuant to Rule 21 was the proper avenue for redress. Id. at 514, 568 A.2d at 346-47. We explained:

> Mandamus is appropriately invoked to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so . . . but only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy. We hold that the trial court stepped outside its authority by rejecting the applicable sentencing statute. Therefore, extraordinary relief in the nature of mandamus is an appropriate vehicle for review.

Id. at 514, 568 A.2d at 347 (citations, quotations, and alterations omitted). Invoking our authority to suspend rules pursuant to Vermont Rule of Appellate Procedure 2, we treated the State's appeal

as if it had requested extraordinary relief pursuant to Rule 21 and we reviewed the trial court's rulings. Id. at 514-15, 568 A.2d at 347.

¶ 22. Even though we upheld the constitutionality of the mandatory-minimum sentencing requirements, and accordingly concluded that the trial court had erred by imposing sentences less than the mandatory minimums, we declined to actually grant the extraordinary relief of remand and resentencing. Id. at 521-22, 568 A.2d at 351. Noting that three years had passed since the defendants' crimes, and the fact that the delay was occasioned in part by the trial court's error as well as delay in the Supreme Court, we concluded that resentencing and incarceration at that point would be unfair. Id. at 521, 568 A.2d at 351. Accordingly, although we considered the merits of the State's challenges, and actually ruled in favor of the State on the law, we denied the State's petition for extraordinary relief. Id. at 522, 568 A.2d at 351.

¶ 23. Our decision in Saari strikes a thoughtful balance between this Court's constitutionally recognized common-law power to "issue all writs necessary or appropriate in aid of its appellate jurisdiction," Vt. Const. ch. II, § 30, and the Legislature's authority to determine the circumstances in which the State has a statutory right to appellate review. It does not foreclose the possibility that we may exercise our common-law and constitutionally recognized authority to grant extraordinary relief in a proper case, but it generally respects the Legislature's choices as to when appellate review may be available to the State. And it leaves the State free to advocate to the Legislature for a broader right to appeal in criminal cases.

¶ 24. Four aspects of Saari are potentially significant for our purposes. First, we allowed for the possibility of extraordinary relief in favor of the State even though the statute clearly did not authorize direct appeal by the State. 152 Vt. at 513-15, 568 A.2d at 347. Second, the standard we set for granting extraordinary relief was a high one—requiring action by the trial court that amounts to a "usurpation of power." Id. at 514, 568 A.2d at 347 (quotation omitted). An error by

10

the trial court resulting in improper acquittal of a defendant who was otherwise duly convicted is not on its own enough to meet that standard. Third, the trial court's error was not a garden-variety error interpreting the law or assessing the record that led to the acquittal of a guilty defendant. Rather, it involved a constitutional ruling by the trial court that amounted to a usurpation of the Legislature's prerogative to establish mandatory sentencing minimums. We explained, "The trial court's decisions ignore [the Legislature's] directives and, by doing so, not only thwart the purpose of the statutes but exceed the court's lawful authority." Id. at 519, 568 A.2d at 350. And fourth, even though this Court recognized the potential for extraordinary relief pursuant to Rule 21, and concluded that the trial court had exceeded its lawful authority, we still declined to grant the State's petition for extraordinary relief on the basis of fairness. So, although Saari recognizes that extraordinary relief may be available to the State even in the absence of a statutory right to direct appeal, it also limits that authority to a narrow class of cases.

¶ 25. Our narrow view of the permissible scope of extraordinary relief for the State when the Legislature has not provided a statutory avenue for review is not unique. In fact, a number of state courts have concluded that they have no authority to grant the government extraordinary relief where the legislature has denied the State a statutory right to appeal. For example, in State, ex rel. Marsland v. Shintaku, 640 P.2d 289 (Haw. 1982) (per curiam), the Hawaii Supreme Court declined to grant extraordinary relief from a judgment of acquittal entered by the trial court in a murder case after the jury rendered a guilty verdict. The court reasoned that "the right of appeal . . . exists only when granted by constitution or statute. Id. at 292. Hawaii's statutes enumerated the limited number of instances in which the State could appeal, and did not allow the State to appeal a judgment of acquittal. Id. The court concluded, "[W]here the legislature has so clearly expressed its intent to specifically deny government appeals from judgments of acquittal, it must follow . . . that an extraordinary writ may not be used to circumvent that intent or this court's duty to

11

respect it." Id. at 293. The court distinguished between extraordinary writs issued "to confine an inferior tribunal to the lawful exercise of its proper jurisdiction, or to require it to act in accordance with its prescribed powers when it was its duty to do so" and those seeking to interfere with the acts, even erroneous ones, that are within the trial judge's general discretion. Id. at 293-94. Where the trial court ruling at issue, however erroneous, was within the trial court's prescribed powers, the court concluded it was powerless to issue an extraordinary writ or review the merits of the State's petition. Id.; see also State v. Cannon, 369 So. 2d 32, 33 (Ala. 1979) (per curiam) ("Mandamus . . . does not lie to review the proceedings of an inferior court on the ground that they were erroneous. Nor is mandamus a substitute for appeal." (citation omitted)); State v. Manck, 870 A.2d 196, 207 (Md. 2005) ("To use the writ to create jurisdiction beyond the boundaries set forth in statutes would essentially vest . . . this Court with the power to define what can be appealed by the State merely by identifying the judicial act under consideration as extraordinary." (emphasis omitted)).

¶ 26.    Other state courts have used extraordinary writs to review cases not appealable by the government pursuant to statute or rule, but have, like us, narrowly limited the circumstances in which such review is proper. See, e.g., State v. Dawson, 38 S.W.3d 319, 325 (Ark. 2001) ("The court will grant a writ of certiorari only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record."); State ex rel. State v. Wilson, 806 S.E.2d 458, 461 (W. Va. 2017) ("The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction."). But see State v. Barrett, 2005 UT 88, ¶ 24, 127 P.3d 682 (explaining that extraordinary relief may be granted where "a lower court abused its discretion," and explaining that factors guiding court's decision whether to award extraordinary relief include "egregiousness

12

of alleged error, significance of legal issue presented by petition, [and] severity of consequences occasioned by alleged error" (quotation omitted)).

¶ 27.    Applying the narrow standard we adopted in Saari, we decline to grant the State extraordinary relief to reverse the trial court's judgment of acquittal, even though we do acknowledge that the trial court erred in entering that judgment, and that, but for the trial court's ruling, defendant could properly have been convicted. We base our decision on several factors.

¶ 28.    First and foremost, in erring below, the trial court did not overstep its authority, as in Saari, by declining to follow a clear and proper statutory directive—in that case statutory mandatory-minimum sentences. The trial court here was authorized by rule to enter a post-guilty-verdict judgment of acquittal, V.R.Cr.P. 29(c), and its error in doing so arose from a misinterpretation of the applicable statutory law. In concluding that a court-ordered visitation schedule with specific parameters was necessary to provide the notice required to support a custodial-interference conviction of a parent when a child is in DCF custody, the trial court got it wrong. But it did not reject as unconstitutional or unenforceable a duly enacted statute of the Legislature, and did not purport to exercise authority it did not have. If such a legal error resulting in an improper acquittal were sufficient to induce us to exercise our powers of extraordinary relief, then the statutory limitations on the State's right to appeal would be meaningless. We could and would grant extraordinary relief whenever the State sought extraordinary relief for a trial-court error leading to an improper acquittal—an approach that would upend the careful balance between our authority and the Legislature's prerogatives that we struck in Saari.[2]

---

[2]    We note that the State did not actually file an original action in this court seeking extraordinary relief pursuant to Rule 21, and has not complied with all of the requirements for filing such a petition. Our decision does not turn on that fact. The State timely filed a notice of appeal to initiate this proceeding, and we initially adjudicated the matter without objection. We have the authority to suspend our rules pursuant to Rule 2 and to treat the State's appeal as a petition for extraordinary relief pursuant to Rule 21—that's exactly what we did in Saari. 152 Vt. at 514-15, 568 A.2d at 347. For the above reasons, however, we decline to exercise that authority.

13

¶ 29.    We need not decide in this case whether there may be circumstances in which other factors supporting a grant of extraordinary relief can outweigh the fact that the trial court's error was nothing more than a misinterpretation of applicable law or failure to properly assess the record. In this case, no such factors are present.  The facts of this case do not involve the kind of especially shocking conduct or exceptional risks to public safety that might potentially induce us to grant extraordinary relief.  And the trial court's legal conclusion, while error, was not so egregious  that we are tempted to treat it as an act beyond the court's jurisdiction.  The State has argued broadly that we should grant extraordinary relief in cases where the State cannot otherwise appeal a ruling that leads to an improper acquittal, but has not persuasively articulated any compelling consideration distinguishing this case from any other.

¶ 30.    For the above reasons, we withdraw our previous decision in this case, dismiss the State's appeal as unsupported by statute, and decline to grant extraordinary relief.

This Court's July 6, 2018 opinion is withdrawn. This appeal is dismissed and extraordinary relief denied.

FOR THE COURT:

_____

Associate Justice

14